I shall confine the consideration of this matter to the questions raised by the formal answer of Glassner. The other stockholder, who presented an objection at the return of the rule, has seen fit not to file a formal answer as required by the order in that behalf.
[1] Glassner's principal objection is based on the alleged unfairness of the sale by United of all its assets to Union in consideration of thirty-one thousand shares of the latter's Class A stock and twenty thousand shares of its Class B stock. The sale was finally authorized by the United's stockholders on July 30, 1930. Notice however of the proposed sale went out to the United stockholders on *Page 221 
June 10, 1930, on which day notice was sent out of a special meeting of stockholders to be held on June 21st for the purpose of considering the same. The meeting was adjourned from time to time until July 30, when action approving the sale was taken by the requisite stock vote.
The occasion for the adjournments from time to time was a restraining order issued by the Supreme Court in New York at the suit of holders of some eight thousand shares of stock, who objected to the fairness of the proposed transaction. A restraining order was prayed for and granted which forbade the Union from voting its stock at the meeting. The meeting was accordingly adjourned from time to time until the restraining order was dissolved.
When the meeting was called, stockholders of United formed a protective committee and presumably the injunction bill in New York was directed by the protective committee.
Glassner did not join his interests with those represented by the protective committee.
Certain it is, however, that he knew of the proposed sale upon receipt by him of the June 10 notice. He neither attended the meeting nor made any protest. The first objection that he ever made to the sale was when he appeared on December 10, 1930, in response to the present rule, and then he asked, as per his answer, that the receiver should be ordered to take steps to secure a rescission of the sale. In the meantime, though the consideration received by United is intact, there have been many mutations in the assets delivered to Union. If a rescission were decreed, it might be possible to work out, to a reasonably satisfactory extent, a restoration of the status quo ante. I doubt it.
It seems to me, however, that the receiver should not be called upon to try it, even if it be true that the sale was an unfair one; for to order the receiver to undertake it would be to order him to do something to repair the consequences of Glassner's indifference. I think Glassner has waited too long. Under the circumstances he is guilty of laches. Other stockholders, owning eight thousand shares, had no difficulty in promptly acting. Why was Glassner slumbering? If he had been as vigilant as they, he could have set up his protest against what he now alleges to be a fraudulent sale at a time when relief against its consequences, if merited, was easy to afford. He had from shortly after June 10 until about July 30 to enjoin a consummation of the transaction. Not having endeavored to do so within that period, and no excuse for his omission being shown, I conclude that he is too late in first seeking to accomplish on December 10, six months after the first notice to him, a rescission that must be attended with some difficulties, in order to serve the same purpose that he could have attained by preventive action before the event at any time from June 10 to July 30, a period of nearly two months.
[2] As to whether the receiver should, in case the idea of rescission is discarded, be instructed to institute suit for damages against the directors and officers of United, a suggestion that has been advanced at one time or another by the solicitors for Glassner, it is sufficient to say that the pending rule gives no occasion for answering it. This is manifest from the fact that the question of whether distribution of the stock held by the receiver should be ordered, can in no sense be dependent for its answer upon whether the receiver has a claim for damages against the United's officers and directors. If there is an asset in the form of a claim for frauds done, that asset when reduced to cash can be distributed later when received.
 The rule will be made absolute. *Page 259