LAWRENCE A. RANKIN,

*vs.*

INTERSTATE EQUITIES CORPORATION.

*New Castle, July* 10, 1935.

*Ivan Culbertson,* for complainant.

*James M. Malloy,* and *R. Randolph Hicks,* of New York City, for defendant.

THE CHANCELLOR: The merger agreement was entered into between the directorates of the three corporations on January 21, 1935. All three corporations are investment trusts. A meeting of the stockholders of the defendant was called for February 18, 1935, for the purpose of approving or disapproving the merger as the case might be. No irregularity of procedure is alleged in the bill. Presumably, therefore, notice by publication once a week for four successive weeks was given to the stockholders of the time, place and object of the meeting and notice to the same effect was mailed to all the stockholders at least twenty days before the meeting, as required by the statute. The bill does not deny that the complainant knew of the meeting and of the terms of the proposed merger. It is silent upon the question of the day when the notices went out. It must be presumed that the complainant knew of the merger at least as early as January 29, 1935, if not earlier. He did not attend the meeting. The notice probably enclosed a copy

of the merger agreement. It did in the case of the meeting of the stockholders of Chain and General Equities Inc. An exhibit to the bill shows that. The complainant has not exhibited a copy of the notice that went to him as a stockholder of the defendant company. It is fair to assume that the notice to the stockholders of his company was as full and detailed as was the notice that went out to the stockholders of Chain and General Equities Inc. If so, he knew of the terms of the merger as early as January 29, 1935.

The complainant did not attend the meeting of the stockholders of the defendant. Had he done so, he could have learned in detail of the proposed terms of merger at that meeting, viz., on February 18, 1935. Certainly he must be charged with notice by not later than that date.

The merger was, so far as the bill shows, duly and regularly approved at that meeting by the necessary number of shares.

It was not consummated however until after March 23, 1935, due to the fact that the meeting of stockholders of The Equity Corporation, another one of the merging companies (into which the other two were proposing to merge) was not to convene until March 23, 1935.

On that day the complainant filed his bill seeking to enjoin the merger. He allowed nearly two months to elapse before seeking an injunction. At the eleventh hour, so to speak, he rushed into this court seeking summary interference with processes that he knew or ought to have known had been in progress for as long at least as two months.

The bill attacks the merger on the ground that it is fraudulent as against the preferred stockholders of the defendant company of whom he alleges himself to be one, owning one hundred and thirty shares out of a total issue of 137,523 shares. He relies on the proposition of law that where a merger proposal is tainted with fraud, a stockholder cannot, in equity, be driven to an election between an appraisal of his stock and payment therefor (*Section* 61

of the *General Corporation Law* [*Rev. Code* 1915, § 1975, as amended by 35 *Del. Laws, c.* 85, § 20]) on the one hand, and abiding by the merger on the other. See *Cole, et al., v. National Cash Credit Ass'n.,* 18 *Del. Ch.* 47, 156 *A.* 183. The fraud which he alleges is when analyzed this: that the officers, directors and stockholders of all three corporations were under the control of one group, that this group had caused The Equity Corporation to incur an indebtedness of about two million, nine hundred thousand dollars in the purchase of a large interest in Reliance International Corporation, another investment trust, which, it was believed, would be a controlling interest but which turned out not to be; that The Equity Corporation did not have in its portfolio readily marketable securities from which it could realize cash in a sufficient amount to pay off its debt of two million, nine hundred thousand dollars; that the defendant did have such readily marketable securities in its portfolio sufficient to liquidate said debt; and that the merger was conceived in order to make it possible to liquidate The Equity Corporation's debt through sale of the defendant's securities in an amount sufficient for that purpose.

The bill as originally drawn failed to allege, and the supporting affidavits did not show, that the investment which The Equity Corporation had in Reliance International Corporation was not worth every dollar of the two million, nine hundred thousand dollars which had been paid for it. If so, the asset balanced the liability and no loss was occasioned to The Equity Corporation by the transaction.

On this showing and because, in addition, to the delay which had characterized the complainant's act in the belated filing of his bill, I directed a vacation of the restraining order.

Since then the complainant has amended his bill by adding an allegation that the value of the stock of Reliance International Corporation is "greatly less than" or, as it is again phrased, is "much less than" the sum of two million,

nine hundred thousand dollars, the amount paid for it, and is not "commensurate" with that sum. How great the discrepancy is, whether it is so great as to amount to fraud, is not alleged. The bill admits that Reliance International Corporation had at the time The Equity Corporation bought into it "a strong and attractive investment portfolio." The bill leaves the impression that the only reason why the Reliance stock is not worth the sum of two million, nine hundred thousand dollars is that the stock is not sufficient in amount to carry control, it being only 24.44 per cent. of the outstanding preferred (which because of dividend lapses has voting rights) and 44.18 per cent. of the Class A common, plus more stock, how much is not alleged, which was acquired for seven hundred thousand dollars (that sum being a part of the two million, nine hundred thousand dollars).

The demurrer is to the bill as amended. The demurrer should be sustained. The allegations on which the charge of fraud rested are too meagre to warrant a finding. The question resolves itself into one of disparity in values and the vagueness of allegation leaves the subject in a haze of obscurity.

Furthermore, when the bill was filed certain steps towards the merger, the final ones, were *in fieri*. They were however about to be taken. It was only a matter of a day or so. The time has long since passed for their accomplishment. As the bill seeks to enjoin the doing of the final act, which, it alleges, was in danger of being about to be done, and as the time has long since passed when it was to be done, it is not unreasonable to say that unless the bill shows that the contemplated act continues to lie in the future and is not now a *fait accompli*, an injunction bill to enjoin its consummation ought not to be retained.

The demurrer will be sustained. Order accordingly.