NORMAN JOHNSON,

*vs.*

CONSOLIDATED FILM INDUSTRIES, INC.,
a corporation of the State of Delaware.

*New Castle, September* 15, 1937.

*Howard Duane,* for complainant.

*Hugh M. Morris* and *Edwin D. Steel, Jr.,* for defendant.

THE CHANCELLOR: At a hearing on bill and answer under *Rule* 43, all the well-pleaded material and relevant allegations of the answer are taken to be true.

One of the grounds upon which the bill relies for relief is that the resolution by which the amendment was adopted did not receive the requisite number of votes. The answer demonstrates by averments of fact that a sufficient number of shares of each class of stock voted in favor of the proposed amendment.

A second ground which the bill advances as a reason for decreeing the amendment to be invalid is that the amendment is to the advantage of the common stockholders and to the corresponding disadvantage of the preferred stockholders, and that the directors, who are largely interested as common stockholders, proposed the amendment and, by reason of the voting power they possessed, caused it to be adopted in the interest of unfairly benefitting their common stock. The answer by its rather full recital of facts relevant to that charge, completely refutes it.

A third ground of attack made by the bill is that the favorable vote of the requisite majority of preferred stockholders was secured by fraud and deceit practiced upon

them by the defendant's directors. The alleged fraud and deceit is alleged by the bill to consist of a failure on the part of the directors to state with sufficient definiteness in the letters to the stockholders accompanying the notice of the meeting, the full effect of the proposed amendment, if adopted, upon the rights of the preferred stockholders. There is no claim that there was any false statement, except in one particular, viz., in the particular that it was stated that the corporation had not been able to pay the full regular quarterly dividend on the cumulative two dollar preferred stock since April 1, 1932. As a matter of fact, payments had been made on account of the dividend. The statement that the corporation had not been able to pay the full preferred dividend of two dollars per year is charged by the bill to be shown to have been false because the earnings per share on the preferred stock for the years 1932, 1933, 1934, 1935 and for the first nine months of 1936, were respectively $2.15, $2.27, $2.29, $2.69 and $1.94. As the arrearages on the preferred stock dividends total five dollars per share, it must be that three dollars per share was paid on account during the period referred to. The answer avers that the need of working capital was such, especially in view of the large credits which the defendant's peculiar business required it to extend, that the directors could not declare dividends on the preferred stock at the full two dollar rate, without seriously endangering the company's safe and prudent management. I think the statement in the letter that the company had not been able to pay the full quarterly dividends on the preferred stock, is not reasonably to be understood as meaning that the dividends had not been earned. The preferred stockholders had been fully advised from time to time by annual and quarterly statements of the extent of the company's earnings. Unless they were woefully unintelligent persons, they must have understood the statement in the letter to mean that the company had not been able to pay the full divi-

dends, not because they had not been earned, but because prudent management forbade the payment. It is to be observed that the annual earnings were barely in excess of the annual rate. I can find no fraud in the statement that the company had not been able to pay the full annual dividends.

The other respects in which the letter to the preferred stockholders is said to have been infected with fraud and deceit, consist of charges, not of things falsely stated, but of things omitted to be explained. As an illustration it is said that the letter failed specifically to point out to the preferred stockholders that if the amendment was adopted, they would not be entitled to receive in cash four dollars of the five dollars accumulated on the preferred stock by way of unpaid dividends. There are other particulars in which it is charged that a like and similar omission to explain the effect of the amendment was not plainly pointed out to the stockholders. Now with respect to all of those particulars of omission, which are about eight in number, this general observation is applicable to all but one of them, viz., that the letter quite accurately laid the facts before the stockholders from which any person who was sufficiently intelligent to raise an inquiry ought to have been able to find his answer. A little bit of thought and some slight arithmetic would have enabled any stockholder to discover from the facts supplied him by the letters just what the consequences of the proposal would be if it was adopted. If facts which are not highly involved and complicated, are truthfully stated, I do not see how fraud can be affirmed because of an omission to state the obvious consequences of those facts.

There was one particular in which the letter to the stockholders omitted entirely to state a fact. It was this. Under the certificate of incorporation as it now exists, no dividend on the common stock can be declared if such divi-

dend would reduce the net current assets of the corporation below two million four hundred thousand dollars. This figure is just three times the annual dividend requirement of the existing four hundred thousand shares of preferred stock. The object of the provision evidently is to insure as a protection to the preferred stock that net current assets equal to three years of preferred dividend requirements shall be in hand before any assets should be paid out to the common stockholders. The proposed amendment reduces the figure of two million four hundred thousand dollars to one million five hundred thousand dollars. The stockholders were not informed of that fact in the information which the letter to them conveyed. This is the only respect in which the communication from the directors omitted to state a fact which the proposed amendment embodied. Now the amount of preferred stock which would be outstanding after the amendment would be five hundred thousand shares, as against the existing four hundred thousand shares. The dividend rate called for by the new stock would be one dollar as against the existing two dollars. Thus, the new figure of one million five hundred thousand dollars would be just three times the annual dividend requirement of the outstanding preferred stock after the amendment. The same relative protection after the amendment, if it becomes effective, will be afforded to the preferred stock as was afforded to it before the amendment. While it may have been better for the directors to state to the stockholders that the figure of two million four hundred thousand dollars was proposed to be changed to one million five hundred thousand dollars, together with an explanation of the change, it cannot be said that failure to do so evidences such deceit and fraud as would warrant a court in declaring the vote of the stockholders to be null and void. The proposed change works no substantial alteration in rights, when the manifest purpose of the provision is kept in mind.

Upon the question of whether the notice to the stockholders, with the accompanying letter of explanation, was characterized by fraud and deceit, I agree with Justice Sheintag of the Supreme Court of New York[1] before whom this matter was presented, who said that "the notice and the letter accompanying it on the whole present a fair and complete picture of the situation, or, in any event, called attention of the stockholders to the salient points of the plan concerning which they could have received additional information if they so desired. There is nothing to show that the stockholders were misled."

If what has been touched on in the foregoing were all that the case involved, the complainant's bill would have to be dismissed.

There is another aspect of the case, however, which requires that a decree should be entered in favor of the complainant, declaring the proposed amendment to be beyond the power of the corporation to adopt as against the complainant and that a permanent injunction should issue as prayed.

The case is exactly similar in principle in all but one respect to *Keller, et al., v. Wilson & Co., Inc.,* 21 *Del. Ch.* 391, 190 *A.* 115, 125, decided by the Supreme Court of this State on November 10, 1936. The only distinguishing feature consists of this, viz., that in the *Keller Case* the corporation was created before the amendment to the *General Corporation Law* in 1927, whereas the corporation in this case was created after said amendment of 1927 (*Rev. Code* 1915, § 1940, as amended by 35 *Del. Laws, c.* 85, § 10). As the enactment of 1927 purports to enlarge the power of corporations to amend their own charters, and as the defendant was created after this enlarged power of self-amendment of charters was conferred, and, as it is contended, the

---

[1]No opinion for publication.

amendment of the charter which is proposed in this case is such as comes within the scope of the enlarged power, it follows, so the defendant argues, that the instant case does not fall within the principle of *Keller, et al., v. Wilson & Co., Inc., supra.* The defendant having been created since the amendment to the act of 1927, it is undoubtedly in better position to claim the full measure of power which the amendment to the act of 1927 confers, than was the defendant in the *Keller Case.*

I find language in the opinion of the court in *Keller, et al., v. Wilson & Co.,* however, which, as I understand it, makes the law as there declared equally applicable to the situation of the defendant here. The language is as follows:

"*Section 26* of the *General Corporation Law* is the section authorizing amendments of corporate charters. It authorizes nothing more than it purports to authorize, the amendment of charters. The cancellation of cumulative dividends already accrued through passage of time is not an amendment of a charter. It is the destruction of a right in the nature of a debt, a matter not within the purview of the section. The cancellation of the right to such dividends is foreign to the design and purpose of the section. The effect of the charter amendment, in so far as it concerns the status of the shares and the rights of the owners, speaking from the time of its accomplishment, is not denied by the complainants; but there is nothing in the language of the section, as amended, which compels a retrospective operation. The rights of cumulative preferred shareholders to the stipulated dividends accrue to them by virtue of the contract. That right exists and persists. When the necessary corporate action, under the amended statute conferring the power is taken, the status of the shares may be changed, and the right thereafter to claim the dividends as originally stipulated may be cancelled, but the amended statute under the general rule of construction, ought not to have a retroactive effect."

A decree will be entered as prayed.

Note. Affirmed on appeal. See *post p.* 407, 197 A. 489.