JOSEPH HAVENDER, SR., and JOSEPH HAVENDER, JR.,

*vs.*

FEDERAL UNITED CORPORATION, a corporation of the State of Delaware.

*Kent, August* 16, 1938.

*Charles L. Terry, Jr.*, of the firm of Hughes, Terry & Terry, and *Abraham L. Pomerantz*, of New York City (Abraham Marcus, James Havender, and Leonard I. Schreiber, all of New York City, on the brief), for complainants.

*Caleb S. Layton*, of the firm of Richards, Layton & Finger, for defendant.

THE CHANCELLOR: The complainants on their brief confine their objection to the alteration in the rights of the old six dollar cumulative preferred stock to that phase of the alteration which is concerned with the attempted destruction of their right to be paid in cash the amount of the unpaid dividends which were accumulated thereon at the date of the merger. They make no contention with respect either to the change of rate operating in the future, or the alteration in voting powers, or the alteration in the liquidation or dissolution value of their stock or in its redemption price. Neither do they contend that the basis of exchange is unfair, if the power exists to compel it.

I shall accordingly confine this opinion to a consideration of the point to which the complainants have confined their contention in their briefs of argument.

The contention is that it was not in the power of the defendant to accomplish by merger proceedings the result of destroying the right of the complainants to be paid out of the earnings of the company the dividends accumulated on

their stock when the earnings are such in the judgment of the directors as to warrant a dividend declaration.

If the defendant had attempted by way of the usual method of amending its certificate of incorporation under *Section* 26 of the act, § 2058, *Revised Code* 1935, to extinguish the right of its six dollar preferred stockholders to receive in cash the dividends accumulated on their stock by compelling them to take in lieu thereof allotments of new shares into which the amendment undertook to reclassify the old ones, the attempt would have been futile. The Supreme Court of this State so decided in *Keller, et al., v. Wilson & Co., Inc.*, 21 *Del. Ch.* 391, 190 *A*. 115, reversing 21 *Del. Ch.* 391, 180 *A*. 584, and in *Consolidated Film Industries, Inc., v. Johnson*, 22 *Del. Ch.* 407, 197 *A*. 489 affirming *Johnson vs. Consolidated Film Industries, Inc.*, 22 *Del. Ch.* 262, 194 *A*. 844

But the defendant contends the principle of those cases is not applicable here, because this is a case of merger under the provisions of *Section* 59 of the statute, *Section* 2091, *Revised Code* 1935, and that distinguishing features therefore exist. The section, it is said, authorizes the merger or consolidation of two or more corporations into one, either by the absorption by one of the other or others, or by the absorption of all by a new corporation; and where that takes place the only recourse, says the defendant, which any stockholder of one of the constituent companies has for an injury which he conceives the merger works upon him, is to make his protest in writing and follow the procedure outlined in *Section* 61 of the *Act, Section* 2093, *Revised Code* 1935, to secure the valuation of his stock and payment thereof. As the complainants did not pursue this course, the defendant insists that the complainants are compelled to accept the alternative of submission to the terms of the merger.

The complainants take the position, if I correctly comprehend the extent to which their argument goes, that in

no case whatever can the holders of cumulative preferred stock of one of the merging companies, on which dividends are accumulated, be compelled to make the choice between, on the one hand, being bought out of the corporation at a valuation price, and on the other, staying in the corporation and surrendering their claim to the accumulated dividends. This contention means that dividends accumulated on preferred stock of one of the merging companies cannot in any case be the subject of composition in the merger terms except by a provision for cash payment thereof in accordance with the stipulated priority. This is a broad contention. Its acceptance or rejection in the broad terms in which it is stated should be only after a full and deliberate examination of considerations which suggest themselves as open to inquiry.

I do not feel called upon by the facts of the instant case to embark upon such an examination.

I say this because I am of the opinion that the so-called merger which the facts disclose here, is at best a mere technical thing in its relation to the complainants' right to be paid the dividends on their preferred stock.

A merger of two corporations, as usually found, occurs when two corporations having a distinct body of stockholders desire to throw their assets and liabilities into a common pool and thereafter have their two enterprises operated and managed as one. Since each has its own particular stock structures applicable to separate and distinct asset and liability congeries, and since the value of the respective shares of each has no relation to the other's assets, it is therefore an inescapable consequence of a merger plan that the equities of each company's shares be translated into and stated in terms of shares having equities in the combination of the net assets of all the constituents. This of course involves the allocation of those combined net assets to the old shares of the constituents on a per share

basis and perhaps the creation of new classes of stock in order to meet the demands of fair and just participations by the old shares. Hence the merger agreement may find it necessary, when one of the merging companies is to survive and continue as the combined one, for the latter to provide for new issues of stock and perhaps for new classes of stock, in order that the just and fair allocations may be made.

Thus a merger may involve a reclassification of the shares and a revamping of the capital structure of the surviving company. But such reclassification or readjustment of capital, it is to be observed, is only incidental and collateral to the primary purpose of distributing the values to the contributing groups of stockholders. Capital readjustments and stock reclassifications are not ends which it is the function of mergers to accomplish. They are only subsidary mechanics which the principal end of the combining and blending operation upon the corporate creatures and their businesses makes necessary to be employed.

Now, what do we have here? We have the parent corporation absorbing its one hundred per cent owned subsidiary. There was no problem of adjusting the relative rights of stockholding members of the two corporations. That is convincingly shown by the fact that the defendant as sole stockholder of one of the merging corporations, viz., the wholly owned subsidiary, received no stock whatever in the continuing one, itself. The defendant as sole owner of the subsidiary received nothing. If it had, it would have been solely for the benefit of its own stockholders, its equitable owners. It was a case of the defendant simply taking over the assets of its own subsidiary and becoming the immediate instead of the derivative owner thereof.

There was thus no occasion for any reorganization or reclassification of its own capital structure to the end that the equities of its stockholders might be adjusted to a new asset and liability situation and brought in fair re-

lation with the rights of a new group. So far as the combined assets of these two merging corporations are concerned, the defendant's stockholders stood in relation thereto exactly in the same identical position of ultimate rights as owners after the merger as they did before. Before the merger those assets were theirs in the eyes of equity, though not in point of legal title, because their corporation, the defendant, owned all the stock of the subsidiary which had the assets. After the merger, the only change was that one intermediary between the defendant's stockholders and the subsidiary's assets was eliminated as the legal owner.

The resort by the defendant to procedure under the merger section of the act was for the real purpose of reclassifying its stock and of readjusting its capital structure, so as to be able to rid itself of the troublesome problem of its obligation to discharge the dividends accumulated on its preferred stock by cash distribution from its earnings. Indeed the copy of the plan of merger which the defendant sent to its stockholders and the covering letter accompanying the same, contain language which clearly shows that such was the animating purpose. For instance in the former it is stated at the outset that "it is proposed to carry out a voluntary plan for the readjustment of the capital structure of Federal United Corporation by means of a merger of Federal United Corporation and Corporation Bond and Share Company"; and in the latter, the board of directors of the defendant informed the stockholders as follows—"Your directors have for some time been giving serious consideration to the formation of a plan of reorganization making possible the payment of dividends on the preferred stock of your Company. The result of their deliberations is the enclosed plan" of merger with Corporation Bond and Share Company.

It is obvious that the defendant used its wholly owned subsidiary as a mere instrumentality under its control to go with it through the motions of a merger for the purpose

of giving color of legality to what, under the cases hereinbefore cited, it was not permitted to do by way of an amendment of its certificate of incorporation.

The complainants were not required to make a choice between submitting to this circumvention of their rights as preferred stockholders by accepting the terms of the merger, on the one hand, or demanding a valuation of and payment for their stock on the other.

I am of the opinion that the merger was not conceived in any genuine purpose which mergers are designed to serve. Its object and aim was to reclassify the defendant's shares in a manner which the Supreme Court of this State has declared to be not permissible. If what the defendant did will stand the test of legal legitimacy, I can see no escape from the proposition that all a corporation needs to do to escape the results of the law as laid down by our Supreme Court, is to create a subsidiary for itself and then proceed to absorb it by merger. If it be said that deliberation to evade would be too conspicuous in that case to warrant overlooking it, the answer is that evasion cannot be any the more objectionable simply because it might be a little more conspicuous. The difference between using a wholly owned subsidiary already existing and using one specially created for the purpose, to accomplish by a merger an end which bears no preceptible relation to the problem involved in and incidental to the merging operation, is a difference which rests on no basis of substance.

For the reasons above given, I am of the opinion that the complainants are entitled to relief. Whether they are entitled, however, to an injunction, as prayed, against the payment of dividends on the new three dollar preferred stock until all the arrearages on the old preferred stock have been paid, is doubtful. I have some tentative ideas on that question which, however, I abstain from now elaborating. It has not been debated by the solicitors for the parties,

and I prefer to hear from them before reaching a final conclusion with respect thereto. The complainants, however, are entitled to an injunction against declaration and payment of dividends on the two classes of common stock, until the arrearages have been paid which were accumulated on the old preferred.

A decree will be entered in harmony with the fundamental question which the foregoing disposes of, and further argument may be had, if desired, touching the question just referred to as doubtful.

NOTE—After filing of the foregoing opinion, and before further argument on the matter suggested therein, owing to the death of the Chancellor reargument of the cause was had before his successor. See (24 *Del. Ch.*) *A. 2d* 618.