FEDERAL UNITED CORPORATION,
Defendant Below, Appellant,

*vs.*

JOSEPH HAVENDER, SR. and JOSEPH HAVENDER, JR.
Complainants Below, Appellees.

JOSEPH HAVENDER, SR. and JOSEPH HAVENDER, JR.
Complainants Below, Cross-Appellants,

*vs.*

FEDERAL UNITED CORPORATION,
Defendant Below, Cross-Appellee.

*Supreme Court, On Appeal, Jan. 16, 1940.*

LAYTON, C. J., and RICHARDS, RODNEY, and SPEAKMAN, JJ., sitting.

Caleb S. Layton, and *Richards, Layton & Finger*, all of Wilmington, and *T. R. White*, and *White & Staples*, all of Philadelphia, Pa., for appellant.

*Christopher L. Ward, Jr.*, of Wilmington, and *Allen S. Hubbard* (of Hughes, Richards, Hubbard & Ewing), of New York City, and *Daniel O. Hastings* and *Caleb R. Layton 3d* (of Hastings, Stockly, Duffy & Layton), both of Wilmington, *amici curiae.*

*Hughes & Terry*, of Dover, and *Abraham L. Pomerantz*, of New York City, for appellees.

Supreme Court, October Term, 1939.

[Content redacted]

LAYTON, Chief Justice, delivering the opinion of the court:

The first question to be decided is whether a merger of a parent corporation with a corporation wholly owned by it is within the purview of *Section* 59 of the *General Corporation Law*. The late Chancellor, indirectly, gave a negative answer. 23 *Del. Ch.* 104, 2 *A.* 2d 143. He made no reference to the amendment of April 13, 1937, designated as *Section* 59A; and we prefer to think that the amendment was not called to his attention, for in such case, no doubt, there would have been some modification of expression. The present Chancellor was specific. In his opinion a merger of a parent corporation with its wholly-owned subsidiary was not within the contemplation of *Section* 59. This was apparent, as he said, from the provision that the merger agreement shall state the "manner of converting the shares of each of the constituent corporations into shares of the consolidated corporations"; and he referred to the amendment, designated as *Section* 59 *A*, as indicating that the Legislature had found it necessary to amend the *General Corporation Law* by expressly authorizing mergers between parent companies and their wholly-owned subsidiaries. *Ante p.* 96, 6 *A.* 2d 618.

We find ourselves unable to agree with this view. By *Section* 59, any two or more corporations organized under the *General Corporation Law*, or existing under the laws of this state, for the purpose of carrying on any business, may merge. The language of the authority is plain, understandable and general. The power is not qualified or re-

stricted by limitation or exception. Limitations on power are usually to be found in the language of the grant, or in a reservation or exception attached to the grant. The language singled out by the learned Chancellor as indicating a limitation on the general authority conferred is not concerned with extent of the power granted. It relates to the details of merger agreements; and is general directory language applicable, *mutatis mutandis*, to all circumstances of mergers and consolidations. An exception to the all-embracing authority conferred by the section is not, we think, to be found in the language seized upon. The general rule of statutory construction repeatedly affirmed by the courts of this state generally, and, in particular, by this court, is that where the language of a statute is plain and conveys a clear and definite meaning, the courts will give to the statute the exact meaning conveyed by the language, adding nothing thereto, and taking nothing therefrom. *Van Winkle v. State, 4 Boyce* (*27 Del.*) *578, 91 A. 385, Ann. Cas. 1916D*, 104. And, specifically, where the Legislature had made no exception to the positive terms of a statute, the presumption is that it intended to make none, and it is not the province of the court to do so. *Lewis v. Pawnee Bill's Wild West Co., 6 Pennewill 316, 66 A. 471, 16 Ann. Cas. 903.*

It is for the Legislature not for the court, to declare the public policy of the state; and it is not, therefore, the function of the court to graft an exception on the plain and positive terms of the statute.

The amendment of April 13, 1937, designated as *Section 59A*, does not expressly confer authority to consolidate or merge, as does *Section 59*. The section proceeds at once to declare that any corporation of this state, owning all of the stock of any other corporation of this state or of any other state which permits corporate mergers, may posssess itself of all of the estate, property, rights and franchises of its wholly-owned corporation by filing with the Secretary of State a certificate of a certain form and content,

and recording a certified copy in the proper county or counties. The section states the changes with respect to the parent corporation that may be effected under its provisions; and other changes contemplated by the plan of merger are required to be accomplished under the provisions of *Section* 59 as that section has existed substantially since the adoption of the *General Corporation Law* in 1899. Read in connection with the general and unrestricted authority conferred by *Section* 59, the amendment is declaratory of the right of all Delaware corporations to consolidate or merge, its immediate purpose being, not a grant of power, but a simplification of procedure with respect to mergers of parent corporations with their wholly-owned subsidiaries.

We are of opinion, therefore, that a merger of a parent corporation with a subsidiary wholly owned by it is within the purview of *Section* 59 of the *General Corporation Law*.

Next to be considered is whether, under the merger and consolidation provisions of the *General Corporation Law*, and apart from those provisions with respect to a valuation of stock either by agreement or by appraisal, dividends accumulated on the cumulative preference stock of one or more of the constituent companies may be disposed of other than by paying to the dissatisfied shareholder the amount of them in money.

Neither of the learned Chancellors below thought it necessary to consider the question. In their view, the corporate proceeding complained of, while styled a merger, was no more than an unauthorized attempt at a recapitalization of the defendant corporation, ineffective, as against objection, to extinguish accumulated dividends on preference stock within the rule announced by this court in *Keller v. Wilson & Co., Inc.*, 21 *Del. Ch.* 391, 190 *A.* 115.

The complainants, founding their position on the *Keller* case, insist that the merger sections of the *Corporation Law* not only do not authorize, and could not validly authorize, the abrogation of dividends accumulated on pref-

erence stock, but, on the contrary, expressly preserve the right to such dividends. The contention is that in the *Keller* case this court held that the right of a holder of cumulative preferred stock to eventual payment of dividends in arrear on his stock, was a fixed contractual right, a right in the nature of a debt, in that sense vested, and not to be taken away by a voluntary recapitalization without the consent of the holder of the stock. In the cited case, a recapitalization of a corporation under *Section* 26 of the *General Corporation Law, Revised Code* 1935, § 2058, was involved. At the time of the formation of the corporation and the issuance of the stock, the right of the holder of cumulative preferred stock to dividends accrued thereon through time was protected against destruction by charter amendment under *Section* 26. Relying on an amendment to the section subsequently enacted, the corporation attempted to cancel the dividends accrued on its preference stock. It was held that there were limitations on the general reserve power of the state. The rationale of the decision, stated and reiterated, was that when the nature of the right of the holder of cumulative preferred stock to unpaid dividends accrued thereon through time was examined in a case where the right was accorded protection when the corporation was formed and the stock was issued, it was such a right that could not be destroyed by corporate action taken under an authority subsequently conferred. In such circumstances, the right was considered to be of the dignity of a fixed contractual right in the nature of a debt. The decision has no application beyond its philosophy. It has no bearing on the question in dispute. The substantial elements of the merger and consolidation provisions of the *General Corporation Law* as they now appear have existed from the time of the inception of the law. It is elementary that these provisions are written into every corporate charter. The shareholder has notice that the corporation whose shares he has acquired may be merged with another corporation if the required majority of the shareholders agree. He

is informed that the merger agreement may prescribe the terms and conditions of the merger, the mode of carrying it into effect, and the manner of converting the shares of the constituent corporations into the shares of the resulting corporation. A well understood meaning of the word "convert," is to alter in form, substance or quality. Substantial rights of shareholders, as is well known, may include rights in respect of voting, options, preferences and dividends. The average intelligent mind must be held to know that dividends may accumulate on preferred stock, and that in the event of a merger of the corporation issuing the stock with another corporation, the various rights of shareholders, including the right to dividends on preference stock accrued but unpaid, may, and perhaps must, be the subject of reconcilement and adjustment; for, in many cases, it would be impracticable to effect a merger if the rights attached to the shares could not be dealt with. The state has an interest in the corporate structures erected under its authority. Having provided for the merger of corporations, they are not regarded with disfavor. On the contrary, mergers are encouraged to the extent that they tend to conserve and promote corporate interests. The catholic quality of the language of the merger provisions of the law negatives a narrow or technical construction if the purpose for which they were enacted is to be accomplished. *MacFarlane, et al., v. North American Cement Corporation*, 16 *Del. Ch.* 172, 157 *A.* 396. Moreover, it is recognized that there may be shareholders who will be dissatisfied with the effect of the terms of the merger proposal upon the rights attached to their shares. While their right to dissent is admitted, the public policy of the state declared by the statute, somewhat analogous to the right of eminent domain, does not permit a dissenting shareholder, as against an affirmative vote of two-thirds, to veto a merger agreement if its terms are fair and equitable in the circumstances of the case. Within the time and in the manner provided by the statute, the dissatisfied stockholder, if he so desires, may demand and

receive the money value of his shares as that value has been agreed upon or has been determined by an impartial appraisement. Consequently, in a case where a merger of corporations is permitted by the law and is accomplished in accordance with the law, the holder of cumulative preference stock as to which dividends have accumulated may not insist that his right to the dividends is a fixed contractual right in the nature of a debt, in that sense vested and, therefore, secure against attack. Looking to the law which is a part of the corporate charter, and, therefore, a part of the shareholder's contract, he has not been deceived nor lulled into the belief that the right to such dividends is firm and stable. On the contrary, his contract has informed him that the right is defeasible; and with that knowledge the stock was acquired. In such situation the shareholder is not confronted, as was the complainant in the *Keller* case, with a proposed alteration of rights attached to preference stock not within the contemplation of the law as it stood when the corporation was formed and the stock issued (except as an alteration of rights may be said to be imagined under the general reserve power of the state) and with no alternative right to demand and receive the value of his stock in money.

The broad contention advanced by the appellees, that the merger provisions of the *General Corporation Law* do not authorize the extinguishment of dividends accumulated on preference stock, even if the terms of the merger proposal are fair and equitable, must be denied, unless the effect of the qualifying clause at the end of *Section* 60 is such as to compel the recognition of such unpaid dividends as a debt or liability of the corporation enforceable against the resulting corporation.

It is to be supposed that the Legislature intended to give to the words and terms employed by it their usual and ordinary meaning and significance. A holder of preference shares as to which dividends have accumulated

through time is not a creditor of the corporation in the ordinary and usual meaning of the word; nor is he the holder of a lien as that word is usually understood. In proximate contextual relation to the words, "creditors" and "liens," are the words, "debts," "liabilities" and "duties." The connotation of these words, having in mind the significant fact that there is nothing in the section that purports to deal with the rights of shareholders, leads to the conclusion that the words and terms were not intended to refer or to be applicable to the results of the contractual relation arising out of stock ownership either as between the shareholders *inter sese,* or as between the shareholder and the corporation. The words and terms are readily to be understood as referable to persons external to the corporation, and to debts, liabilities and duties due from the corporation to them, and not. to those internal liabilities and duties of the corporation to the shareholder which spring .from that relationship. If the legislative intendment had been otherwise, the necessity for positive and unequivocal language is plainly indicated; and it would not have been difficult to make clear the meaning and purpose of the qualifying clause. Considering as a whole the merger and consolidation sections of the *General Corporation Law,* we are not willing to ascribe to the words and terms of the qualifying clause of the section a significance that would make them comprehensive of such internal liabilities of .the corporation as may be supposed to proceed from the recognition of unpaid dividends accumulated on preferred stock as in the nature of a debt due from the corporation to the shareholder. See 1 *Machen, Corporations,* § 538.

The unsatisfactory character of the authorities offered by the appellees in support of their contention is some warrant for the view which we take of the law. *Goodisson v. North American Securities Co.,* 40 *Ohio App.* 85, 178 *N. E.* 29, 31, is cited and quoted as holding that "the statutory remedy [appraisal] was not intended by the Legislature to constitute the exclusive remedy. of a dissenting share-

holder"; but upon examination it will be found that the court made no such pronouncement. The right of a subscriber to stock of a corporation which had merged with another corporation before the entire stock subscription had been paid was involved. The plan of merger was unfair and inequitable. The complainant subscriber had notice of the meeting of stockholders, but had no voice thereat as an unregistered holder of stock. She brought suit in equity for an accounting on the theory that the corporation was trustee of the money paid by her to it under her subscription contract; and she was met by the claim that she should have given notice of her dissatisfaction, and should have demanded a valuation of her stock under the statute. It was in these circumstances that the court said,

"We are inclined to the view that the statutory remedy was not intended by the Legislature to constitute the exclusive remedy of a dissenting shareholder, and that if equitable grounds exist a resort may be had to a court of equity for the enforcement of such rights as may exist in a dissenting shareholder."

In like manner, the appellees quote a part only of a statement of the Court of Errors and Appeals in the case of *Windhurst v. Central Leather Co., infra,* as follows:

"The consolidation statute does not authorize a compulsory conversion or sale of stock on terms that would impair the obligations of a stockholder's contract." [107 *N. J. Eq.* 528, 153 *A.* 403.]

The whole of the court's statement, and its relevancy, will appear later in the discussion of the case.

*Boardman v. Lake Shore, etc., Ry. Co.,* 84 *N. Y.* 157, is cited as supporting the proposition that the right to accumulated dividends in arrear is a liability that survives against the resulting company after the completion of a merger. There, however, the dividends on the preferred stock were expressly guaranteed both in the resolution of the directors under which the stock was issued and in the stock certificates, well within the agreement of consolidation by which the consolidated company assumed all "just

debts, guarantees, liabilities and obligations" of the consolidating companies. What the basis of exchange was with respect to the stock of the consolidating companies, and whether the stockholders were to be compensated equitably for accrued dividends, are matters not disclosed by the report of the case. It does appear, however, that the consolidation was not effected under statutes in existence when the corporation was formed and the stock issued, but under special statutes enacted thereafter. Because of these circumstances the relevancy of the case is obscure.

In the same connection, *Colgate v. United States Leather Co.*, 73 N. J. Eq. 72, 67 A. 657, is cited. There the complainants were holders of the eight per cent. preference stock of United States Leather Company. They sought to enjoin a consolidation of the corporation with General Leather Company. By express provision of the preferred stock certificate, holders of the stock were entitled to a cumulative dividend of eight per cent. per annum, payable out of the earnings of the company before any payment on the common stock, and in case of non-payment in full of any such yearly dividend the portion unpaid was charged without interest on the earnings of the company prior to the claims of the common stock. Dividends had accumulated on the preferred stock to an amount exceeding forty-five per cent., or upwards of $28,000,000. The company had a surplus of over $20,000,000, of which $7,000,000 was concededly earned. The merger agreement proposed to convert each share of the preference stock and the accrued dividend thereon into $50 face value in bonds, $50 in seven per cent. preferred stock of the new company, and $23.50 in common stock, the latter amount admittedly being given in settlement of unpaid dividends. As the court found, the result of the merger was that the common stockholders received $18,-000,000, and the preferred stockholders $14,000,000 of the new common stock. At that time, moreover, there was a statute which required the directors of manufacturing companies, after reserving over and above the capital stock

paid in, as a working capital, such sum as should have been fixed by the stockholders, to declare a dividend of the whole of the accumulated profits exceeding the amount so reserved, and to pay the dividend to the stockholders on demand; provided that the corporation in its certificate of incorporation, or in the by-laws, might authorize the directors to fix the amount to be reserved. There was no formal reservation of accumulated profits for working capital. In these circumstances it was held that the claim of the preferred stockholders to accumulated dividends was in the nature of a liability or duty which, if not surrendered, would continue against the new company.

The learned Vice-Chancellor viewed a merger as a dissolution or termination of the business of the corporation; and on this hypothesis the provisions of the stock certificate were of paramount importance. See *Penington v. Commonwealth Hotel Construction Corporation,* 17 *Del. Ch.* 394, 155 *A.* 514, 75 *A. L. R.* 1136. Again, under the statute then in operation, the preferred shareholders were potential legal creditors of the corporation to the extent of accumulated profits above the amount reserved for working capital; and there were large accumulated profits, and no reserve for working capital had been fixed. Furthermore, the plan of consolidation was unfair and inequitable in that it undertook to transfer to the common shareholders a portion of the assets of the company which legally and equitably belonged to the preferred shareholders.

The directors of the company accepted the decision and withdrew the plan of consolidation; and while eventually the case went to the Court of Errors and Appeals, it was not on the question under discussion.

In the circumstances shown the decision is not difficult to understand; but we are not willing to accept it as an authority for the broad proposition that in the case of a merger of corporations dividends accumulated on preferred stock can, in no event, be disposed of other than by

paying the amount of them to the dissatisfied shareholders. It seems not to have been so understood in *Windhurst v. Central Leather Co., infra,* where the theory that a merger operated as a dissolution was definitely repudiated; and we do not agree that the late Chancellor, by his reference to the case in *Cole v. National Cash Credit Association,* 18 *Del. Ch.* 47, 156 *A.* 183, meant to suggest that, in no circumstances, under the merger provisions of the *General Corporation Law,* may dividends accumulated on preferred stock be discharged other than by money payment, for in his opinion herein (23 *Del. Ch.* 104, 2 *A.* 2d 143) he referred to the appellees' theory as a broad contention, to be accepted or rejected only after a full and deliberate discussion.

The appellant cites *Jones v. St. Louis Structural Steel Co.,* 267 *Ill. App.* 576, 577, 580, and *Windhurst v. Central Leather Co.,* 101 *N. J. Eq.* 543, 138 *A.* 772; *Id.,* 105 *N. J. Eq.* 621, 149 *A.* 36; *Id.,* 107 *N. J. Eq.* 528, 153 *A.* 402. In the first case the Appellate Court of Illinois for the Fourth District had before it a provision in the stock certificate of a Delaware corporation to the effect that no merger of the corporation with another corporation should in any way impair the rights of the preferred stock. This provision was held to be invalid as in conflict with the statute; and the complaining stockholder was held not to be entitled to cash payment for his shares upon a merger of corporations, the court saying that *Section* 59 of the Delaware statute "never intended that the preferred stock of a corporation should not be impaired in any way by a merger."

In the *Windhurst* case, Central Leather Company and United States Leather Company agreed to merge. The complainant was a holder of seven per cent. cumulative preferred stock of Central Leather Company of the par value of $100, of which approximately 330,000 shares were outstanding, and on which dividends had accrued to the extent of about forty-three per cent. Under the merger plan, for

each share of the old preferred stock, the holder was to· receive one-half share of the new seven per cent. prior preference stock of the par value of $100, a ¾ share of Class A Participating and Preferred stock, the stated value of which ¾ share was $23, and $5 in cash; and the surrender of all rights to accumulated dividends was required. The complainants objected on the grounds that the plan was unfair, inequitable and in the interests of the common stock; and that it deprived him of his vested rights to accumulated dividends. With respect to the first ground of complaint the Vice-Chancellor held that the plan was fair and equitable having regard to the condition of the company, the advantages and privileges accorded to the holders of the prior preference stock off-setting the disadvantages. With respect to the second question, he said that it was impossible to enter into an extensive examination of the legality of the attacked procedure because of lack of time; that his first impression was that the underlying rationale of *Day v. United States Cast Iron Pipe & Foundry Co.*, 96 *N. J. Eq.* 736, 126 *A.* 302, was applicable, a case where a dividend was paid on common stock out of a working capital reserve earned during years when the dividend had been passed on non-cumulative preferred stock. He then proceeded to make a general statement with respect to the right of a corporation to adopt a policy over the objection of any of the preferred stockholders whereby the holders of the common stock may be permitted to share in the earnings of the company without a literal enforcement of the rights of preferred shareholders as those rights were fixed at the time of the creation of the company, observing that any vigilant, *bona fide* holder of a single share of such preferred stock, not in default himself, ought, in such case, to have the aid of the court. Manifestly, the court was directing attention to a plan of merger that would operate to enrich common stockholders at the expense of holders of preferred stock, for later in the opinion (101 *N. J. Eq.* 543, 138 *A.* 775) it was said:

"It is not a case of enjoining an *ultra vires* act of the corporation, because the statute expressly permits the merger and leaves the details of the operation to a two-thirds majority of each class of stock. Of course, if there was any question of fraudulently attempting to enrich one class of stockholders by the impoverishment of another class, the reports are filled with cases making it the duty of this court to protect the latter."

Relief was denied the complainants because of conduct amounting to laches. Thereafter, they amended their bill so as to include a prayer that, in the event of denial of injunctive relief, the contract created by the purchase of the preferred stock by the complainants be specifically enforced, and that the defendant company be decreed to pay to each complainant the par value of his stock together with an arrears of dividends, on the theory that the merger operated as a dissolution of the corporation. This theory was held unsound. *Windhurst v. Central Leather Co.*, 105 N. J. Eq. 621, 149 A. 36. The Vice-Chancellor said that the plain meaning of the act was that corporations merging were to be continued as a joint or consolidated whole; that it was within the power of the Legislature to permit a merger, for the law was the same in that respect at the time of the creation of the corporation as at the present; and that every stockholder took his stock with notice of the powers conferred upon the corporation issuing the stock. The court stressed its previous holding that the plan of conversion of shares was fair and equitable, saying that if the decision had been otherwise, the result of a timely application would have been exactly opposite. There was a final decree dismissing the bill.

The Court of Errors and Appeals, in a *per curiam* opinion (107 N. J. Eq. 528, 153 A. 402, 403), approved the two opinions of the Vice-Chancellor, saying that they had dealt satisfactorily with all of the points of contention made on the appeal. The sixth point of contention was that "the consolidation statute does not authorize a compulsory conversion or sale of stock on terms that would impair the obligations of a stockholder's contract."

To this contention, the court made this pregnant answer,

"This may be conceded, pointing out by way of comment that the stockholders' contract is not restricted to the certificate of incorporation, but includes the pertinent provisions of the Corporation Act relating to merger and consolidation."

It will be noticed, of course, that the merger plan, in no sense, provided for the "literal enforcement" of the rights of the preferred shareholders, for they were to receive only $5 in money as against $43 accrued on the preferred stock, and the total of the values to be received by them was only $78 as against a face value of $143. Notwithstanding, the plan of conversion was held to be fair and equitable. The observations of the Vice-Chancellor are utterly irreconcilable with the theory that, in no case, can dividends accumulated on preferred stock be extinguished except by their payment in money against the objection of a dissenting shareholder; and, as his conclusions were approved by the Appellate Court, we are unable to view the *Windhurst* case in any light other than as permitting, in the case of merger of corporations, dividends accrued on preference stock to be disposed of other than by money payment, if the plan of merger is fair and equitable in the circumstances of the case, not operating to enrich one class of shareholders at the expense of holders of preferred stock.

There is no invasion of legal or equitable rights, nor is there moral wrong, in disposing of dividends on preference stock accumulated through time other than by their payment in money, if the right to such dividends has not the status of a fixed contractual right under the law as it stood when the corporation was formed and the stock was issued, and if the terms of disposal are fair and equitable in the circumstances of the case; and especially is this true where provision is made for payment of the value of the shares to the dissatisfied shareholder. To say that the right to such dividends may not be destroyed by charter amendment under *Section* 26 of the *General Corporation Law* which, when the corporation was formed and the stock is-

sued, did not authorize the destruction of the right, and with no alternative right in the shareholder to demand payment in money of the value of his stock, is not to say that the right may not be compounded under the merger provisions of the law which warn the shareholder that his right is defeasible, and which, if he is dissatisfied, entitle him to demand and receive the money value of his shares. There is a clear distinction between the situations recognized by the *General Corporation Law* and the modes of procedure applicable to each of them; and we think that the strictness of view of the merger provisions of the law entertained by the learned Chancellors below was, perhaps, induced by overlooking the distinction, so that it was assumed that to attempt to accomplish by merger that which could not be done by mere charter amendment, was a perversion of the statute in an effort to escape the reach of the decision in the *Keller* case.

It is not suggested that the terms of the plan of merger were unfair or inequitable. We conclude, therefore, that the accumulations of dividends on the preference stock of the defendant corporation were lawfully compounded. The complainants were put to their election, either to demand payment in money of the value of their preferred shares as agreed upon, or as ascertained by an appraisement, or to accept the exchange of securities offered by the merger plan. No effort was made to agree upon a valuation of the shares, and no appraisement was sought. Manifestly, under the provisions of the statute, a valuation cannot be demanded now. The complainants must accept the terms of the merger agreement.

Apart from what has been said, the complainants were not entitled to relief. In the circumstances disclosed by the record they were guilty of laches. Even if we had been compelled to hold that a merger of a parent corporation with its wholly-owned subsidiary was not within the contemplation of *Section* 59, and that the corporate proceeding was

no more than an attempt at a reclassification of shares under *Section* 26, the act was void only as against dissenting shareholders; and no supposed public policy would have sufficed to declare the plan to be void and the conversion of shares a nullity if all of the interested shareholders had assented. *Trounstine v. Remington Rand,* 22 *Del. Ch.* 122, 194 *A.* 95.

A court of equity moves upon considerations of conscience, good faith and reasonable diligence. Knowledge and unreasonable delay are essential elements of the defense of laches. The precise time that may elapse between the act complained of as wrongful and the bringing of suit to prevent or correct the wrong does not, in itself, determine the question of laches. What constitutes unreasonable delay is a question of fact dependent largely upon the particular circumstances. No rigid rule has ever been laid down. Change of position on the part of those affected by nonaction, and the intervention of rights are factors of supreme importance. The promptness of action demanded of a stockholder objecting to the accomplishment of a proposed corporate act which, although unauthorized, is capable of ratification, is dependent in a large degree upon the effect of his delay on others; and where many persons will be affected by an act that involves a change of capital structure and a material alteration of rights attached to stock ownership, the stockholder, having knowledge of the contemplated action, owes a duty both to the corporation and to the stockholders to act with the promptness demanded by the particular circumstances. *Romer v. Porcelain Products, Inc.,* 23 *Del. Ch.* 52, 2 *A.* 2d 75. In *Rankin v. Interstate Equities Corporation,* 21 *Del. Ch.* 39, 180 *A.* 541, a delay of two months was held to be laches. In *Union Financial Corporation of America v. United Investors' Securities Corporation,* 18 *Del. Ch.* 146, 156 *A.* 220, a delay of six months was held to constitute laches, the Chancellor calling attention to the fact as one worthy of notice that the complainant had twenty days to move to enjoin the consummation of the transaction

under attack. In *Finch, et al., v. Warrior Cement Corporation, et al.,* 16 *Del. Ch.* 44, 141 *A.* 54, there was a delay of ten months; and it was held that the complainants could not sit by while the purchasing company and the new interests were altering substantially their situations, the Chancellor observing that where there is no actual fraud, the equity which underlies the doctrine of laches appeals with especial persuasiveness. In *Fraser v. Great Western Sugar Co.,* 185 *A.* 60, 14 *N. J. Misc.* 610, a delay of five months was held to bar relief. In *Windhurst v. Central Leather Co., supra,* the complainant delayed one month before filing his bill to enjoin a merger in circumstances that demanded prompt action. The learned Vice-Chancellor particularly noticed the fact that, although the complainant had appeared at the special meeting of stockholders and had there made his protest, he had given no warning of contemplated legal action; that mean-while the company had changed its position, and that other rights had been created with no other notice than that given by the objection made at the stockholders' meeting; and that the corporation had spent money in and about the completion of the consolidation, and that the securities had been dealt with on the market.

There are comparable circumstances here, with less emphatic protest on the complainants' part and far greater delay. The complainants made their objection to the merger plan by letter. The objection was that "back dividends" would be sacrificed. As an immediate re-action to the proposal, the objection was natural and understandable; but they made no charge of unfairness or illegality, nor did they suggest that they would take legal action. They did not attend the meeting of stockholders to reaffirm their objection. They, of course, knew that an affirmative vote of two-thirds was required for the adoption of the plan; and that, if adopted, at least two-thirds of the old preference stock would be exchanged for the new. They had been informed that an important factor of the plan was the proposed donation of 1,418 shares of the preferred stock of great value,

as well as large amounts of the common stocks, the consummation of which would enhance the value of their preferred shares. They had been advised that the plan of merger would make "possible an immediate payment of dividends at the rate of $3 a share" on the new preferred stock; and, as reasonable men, they must be held to the knowledge that if dividends on the new stock should be paid, and if, as was reasonably probable, the new securities should be dealt in, it would be difficult, if not impossible, to restore the *status quo ante*. These circumstances and considerations were known to the complainants before the plan of merger was adopted. On December 1, 1936, they were advised by letter of the result of the meeting of the stockholders, and that a dividend of seventy-five cents a share had been declared on the new preferred stock. So far as the record discloses, they ignored the letter. On January 8, 1937, they were informed again of the declaration and payment of the dividend. They paid no attention to this letter until February 10, 1937, when one of them wrote a letter which, in the circumstances of their knowledge, must be considered to be disingenuous. It was not until March 2, 1937, that the defendant company was informed that the complainants regarded the merger proceedings as illegal; and no legal action was taken until June 30, 1937. Meanwhile, a second dividend had been paid on the new preferred stock in April, and a third dividend had been declared on June 1, 1937, payable on the first of the following month; the donated shares had been retired and cancelled; the exchange of securities had been largely accomplished; and a considerable number of shares had been transferred among the shareholders of the company. The essentials of full knowledge, unreasonable delay, change of position, and intervention of rights are plainly indicated. The inference is warranted that the complainants wanted not so much to prevent the accomplishment of the merger as they did to profit from the confusion resulting from the supposedly unauthorized corporate action.

We do not say that an objecting stockholder must, in every case, move to enjoin a proposed corporate action in order to escape the imputation of laches; but is to be said that prompt action means unambiguous and decisive action; and it is, at the least, incumbent on such stockholder to give notice in plain and unequivocal terms that the intended invasion of rights will be contested.

Sitting by inactive and in what amounts to silence, when every consideration for the rights of others demanded prompt and vigorous action, and until affairs had become so complicated that a restoration of former status was difficult, if not impossible, is conduct amounting to laches.

It is unnecessary to consider other questions raised on the appeals.

The decree of the court below is reversed, with the direction to enter a decree dismissing the bill of complaint, with costs on the complainants.

On Motion for Reargument.

PER CURIAM.

Upon consideration the motion is denied. The language of the merger statute (*Revised Code of* 1935, *Sec.* 2091) contemplates the conversion of the shares of the constituent corporations, with all the rights attached thereto, into shares of the resulting corporation. The rights and dividends on cumulative preferred stock is a right attached to the shares. The language of the merger statute, with its right of stock appraisement and payment in cash and withdrawal from the enterprise, permits of no reasonable doubt that a retrospective operation was intended. There is no conflict between this case and *Consolidated Film Industries v. Johnson,* 22 *Del. Ch.* 407, 197 *A.* 489. The statute involved in the cited case was of such a different nature and purpose from the statute now considered that there is no necessary relation between the two.