HELEN E. COTTRELL,

*vs.*

THE PAWCATUCK COMPANY (formerly the C. B. Cottrell & Sons Company) a Delaware corporation, HARRIS-SEYBOLD COMPANY, a Delaware corporation, DONALD C. COTTRELL, RIDLEY WATTS, ARTHUR M. COTTRELL, JR., and CHARLES P. COTTRELL, JR.

*New Castle, July 21, 1954.*

*Arthur G. Logan,* of Logan, Marvel & Boggs, Wilmington, for plaintiff.

*Henry M. Canby,* of Richards, Layton & Finger, Wilmington, and *Frank Chapman* of Robinson, Robinson & Cole, Hartford, Conn., for defendants Pawcatuck Co., Donald C. Cottrell, Ridley Watts, Arthur M. Cottrell, Jr., and Charles P. Cottrell, Jr.

*Richard F. Corroon,* of Berl, Potter & Anderson, Wilmington, for defendant Harris-Seybold Co.

SEITZ, Chancellor: Plaintiff seeks a preliminary injunction to restrain the defendant, The Pawcatuck Company, from holding a stockholders' meeting called for the purpose of obtaining stockholder ap-

proval to a plan of liquidation, and/or from distributing its assets pending a determination of the merits of her complaint.

In her complaint filed December 4, 1953, plaintiff sought to enjoin the corporate defendant, C. B. Cottrell & Sons Company (called "Old Cottrell Company") from selling its assets to the other corporate defendant, Harris-Seybold Company on the grounds, *inter alia,* that the value to be received therefor was grossly inadequate and no effort was made to get the best price.

Plaintiff sought and obtained a restraining order on December 8, 1953. Subsequently the old Cottrell Company filed a motion to vacate the restraining order on the condition that a bond be filed to protect plaintiff's possible loss by virtue of the sale. The court indicated orally that the motion would be granted on such condition. Whereupon plaintiff voluntarily moved to vacate the restraining order and the rule to show cause why a preliminary injunction should not issue. This was done by the court's order of December 8, 1953. The sale of assets was then consummated immediately.

Harris-Seybold Company, the purchaser, caused a new corporation to be formed with the same name as the selling corporation, viz., C. B. Cottrell & Sons Company, and caused the assets to be transferred to that company. The purchase price consisted of $2,010,000 in cash, 14,000 shares of Harris-Seybold common stock valued at $35 per share and the assumption of the old Cottrell Company's liabilities in the sum of $1,053,997.33. For this the old Cottrell Company transferred a going concern consisting of land, buildings, machinery, inventory, good will, etc., used in the manufacturing of printing presses.

The selling corporation, having sold its corporate name, took the name The Pawcatuck Company ("Pawcatuck") and its new name has been substituted in this action. Later Pawcatuck contracted with certain of its stockholders to purchase their stock at $625 per share and such stock was purchased for cash payments of $1,717,500. This offer was also made plaintiff who refused to accept it. Later the directors voted to redeem and did redeem 2,650

shares of its 6% preferred stock and paid therefor the sum of $280,900. Plaintiff was aware of and made no objection to these acts.

On March 24 of this year, Pawcatuck filed with the federal government and was subsequently allowed a tax refund of $1,141,159.34 which was received on June 29, 1954. This arose from the loss on the sale of assets. Plaintiff knew that such a claim would be made were the sale consummated.

At a directors' meeting held May 10, 1954, a plan for the liquidation of Pawcatuck was adopted and a special meeting of stockholders called to approve it. This is the meeting plaintiff now seeks to have enjoined. At the same directors' meeting the board authorized its president to sell 7,700 shares of the common stock of Harris-Seybold at $33 per share. This sale was consummated. Parenthetically, in February of this year Pawcatuck received a stock dividend of 700 shares of Harris-Seybold.

Pawcatuck's present assets are worth about $2,700,000. One asset is cash in the sum of $1,141,159.34, representing the tax refund. But this sum would have to be returned to the government if the sale of assets were to be upset. Another asset of Pawcatuck consists of 7,000 shares of Harris-Seybold stock. If the sale of assets transaction were to be set aside, Pawcatuck would have to acquire sufficient additional shares to amount to the present equivalent of the 14,000 shares originally received from the seller. This would require the corporation to go into the market to buy them. The other assets of Pawcatuck consist of cash, insurance, and other assets worth $1,133,424.60.

The present net worth of Pawcatuck, as it appears in the papers, would be insufficient to repay the purchase price. Plaintiff's attorney made no effort to deny this fact.

The new Cottrell Company no longer has on hand the assets received from Pawcatuck because over eighty per cent of the accounts receivable taken over have been paid and there has been practically a complete inventory turnover. Also, the new Cottrell Company borrowed $1,500,000 in connection with the purchase and is obligated to

repay this sum over a 15 year period. There is a substantial penalty if prepayment is made.

Defendant Pawcatuck, as well as the individual defendants, claim that no preliminary injunction should issue for four reasons:

1. The order of the court dated December 8, 1953, had the effect of establishing that plaintiff has no right to a restoration of the *status quo ante*.

2. Plaintiff's action in withdrawing her request for a preliminary injunction amounted to abandonment by her of any right to maintain the *status quo*.

3. Even if a present right to preserve the *status quo* exists, the circumstance makes such a remedy impossible.

4. Even if such a right existed, plaintiff has lost it through her laches.

Preliminarily, two points need to be emphasized. First, plaintiff does not seek any monetary recovery against the Old Cottrell Company. She wants a preliminary injunction only if it can be justified as in aid of the restoration of the *status quo ante,* viz., the ultimate return of the operating business to the Old Cottrell Company. That was her counsel's flat statement at the oral argument and I shall proceed on that premise.

The second point is that defendants' primary challenge to plaintiff's right to a preliminary injunction is not based on any failure to make a proper showing on the merits, so to speak. Their principal point is that since plaintiff's only objective is to have a restoration of the *status quo ante* and since so many substantial changes have taken place that such an "unscrambling" would not be reasonably possible, the court should not perform the useless act of restraining the proposed liquidation.

Plaintiff's attorney says that if the liquidation takes place and plaintiff is subsequently successful on the merits, it will be impossible to restore the *status quo ante*. But he contends that the changes which have so far taken place are not such as to prevent the restoration

of the prior status. Since I assume that a preliminary injunction should not issue where it can serve no useful ultimate purpose, it is necessary to see whether at the present time there is a reasonable possibility that the *status quo ante* could be restored in the event plaintiff is successful. While the new Cottrell Company is not a party I assume that since Harris-Seybold, the purchaser, is a party, there is no question of effectuating any relief which might be granted.

I pass over defendants' first two objections and consider whether plaintiff could obtain a restoration of assets. One point of great importance here is the fact that Pawcatuck could not be able to repay Harris-Seybold if the court directed a restoration of the *status quo ante*. This is because Pawcatuck has purchased a great deal of its stock and also because it would be required to return the tax refund. Plaintiff stood by and permitted these things to take place without objection. It is true that the court ruled that because of certain factors, including the fact that plaintiff was the only objecting stockholder, it would require the filing of a bond rather than jeopardize the sale of assets by continuing the restraining order. However, the court did not pass on the right of plaintiff to enjoin later acts which might prevent the restoration of the *status quo ante* in the event of plaintiff's ultimate success.

The undisputed fact is that Pawcatuck would be financially unable to return what it received from the purchaser Harris-Seybold. Nor is there any substantial likelihood that this picture will change in the foreseeable future. And there is no reason suggested why such a return would not be a necessary prerequisite to the granting of the relief sought. This being so it would be necessary to attempt to recover, if possible, money from those who sold their stock to the company. This would be difficult, to say the least, because plaintiff contends that the stock was worth more than the selling price. Consequently, many problems would arise and all would have to be resolved in plaintiff's favor before the court could even try to "unscramble" the sale of assets omelet.

I cannot see how the situation, reasonably viewed today, would enable the court to restore the *status quo ante* in the event plaintiff is ultimately successful.

Also, plaintiff voluntarily discharged the preliminary injunction rule and stood by for several months with knowledge that important changes were taking place. I think plaintiff's failure to press this matter for months while the various mutations described above were taking place does not commend itself to the court when interim injunctive relief is sought. Thus laches is an additional ground for denying the present application. See 30 *C.J.S., Equity,* § 115; Compare *Union Financial Corp. of America v. United Investors'*, 18 *Del.Ch.* 146, 156 *A.* 220.

I conclude that no preliminary injunction should be granted for the reasons stated.

Order on notice.