THE FIRST NATIONAL BANK OF OCEAN CITY, NEW JERSEY, A CORPORATION, ETC., APPELLANT, v. SAMUEL T. ZELLEY AND EASTERN MOTOR COMPANY, RESPONDENTS.

Submitted October 26, 1929—Decided May 19, 1930.

For the appellant, *William Elmer Brown, Jr.*

For the respondents, *Cole & Cole.*

The opinion of the court was delivered by

BODINE, J.   The First National Bank of Ocean City brought replevin for the recovery of possession of six Dodge automobiles taken from it by the Eastern Motor Company.

The bank claims under bills of sale executed by Reid & Denight, a partnership, duly recorded in the Cape May county clerk's office. The partnership held a dealer's permit from the commissioner of motor vehicles of this state issued pursuant to *Pamph. L.* 1919, *p.* 357, as amended *Pamph. L.* 1925, *p.* 287.

The partners composing the firm of Reid & Denight had intended forming a corporation. The papers were drawn but never executed. In entering into an agreement to become the associate dealer of the Eastern Motor Company, who held an agency contract with the manufacturer, Dodge Brothers, Incorporated, the intended corporation was treated as in existence and was described in the contract as Reid & Denight, Incorporated. The relation between the Eastern Motor Company and Reid & Denight, Incorporated, is fixed in the agreement as that of vendor and vendee. It appears that pursuant to the agreement the cars in question, and others, were bought. Cars purchased were shipped by freight, and documents with draft attached were secured from an Atlantic City bank by Reid & Denight before delivery.

The Circuit Court nonsuited the plaintiff, because it did not appear that Reid & Denight were ever incorporated, and further that the dealings of the parties were such that there was no evidence upon which an estoppel could be predicated against the Eastern Motor Company.

There was error in this ruling. The bills of sale issued to the bank follow the requirements of the statute and were executed by the partnership of Reid & Denight.

The statute is entitled "An act relating to and regulating the sale of motor vehicles * * *," and so far as pertinent provides: "1. * * * The term 'manufacturer's bill of sale' as used in this act shall mean the original bill of sale issued by the manufacturer of the motor vehicle or his agent or his authorized dealer."

"4. In all sales or purchases of a motor vehicle directly from the manufacturer or through an agent or agency or authorized dealer of such manufacturer there shall be issued to the purchaser a manufacturer's bill of sale, which bill of

sale shall contain the manufacturer's number on the engine or motor of the motor vehicle so sold; provided, however, that before any dealer shall be authorized to issue these original or duplicate bills of sale they shall first obtain a permit from the department of motor vehicles. This permit shall be issued at the discretion of the commissioner and without charge to the applicant and may be revoked by him at any time if in his judgment sufficient care has not been taken by the dealer in ascertaining the antecedents of the car; so as to safeguard the purchaser from the purchase of or having in his possession any car that has been stolen or otherwise fraudulently acquired; and provided, further, *that such certificate may in the discretion of the commissioner of motor vehicles empower such dealer or agent to issue such a bill of sale to a purchaser of an automobile of a make for which he is not the authorized agent but of which he is the actual owner.*"

Auto dealer's registration No. D-1781 was issued August 26th, 1926, to Read & Denight. The vehicles sold to the bank and covered by the bills of sale were procured in the regular course of business from the Eastern Motor Company, pursuant to the associate dealer's agreement executed by that company and approved by Dodge Brothers, Incorporated. True, this contract ran to Reid & Denight, Incorporated.

The right of Reid & Denight to issue manufacturer's bills of sale is questioned, because it is said that the statute limits the issuance of bills of sale to the manufacturer, his agent, or authorized dealer. The partnership was, of course, not mentioned in the associate dealer's contract and no mention is made in the statute of bills of sale being issued by an associate dealer, but an authorized dealer is mentioned in the statute. Had a corporation been formed, there is no doubt that it would have been an authorized dealer. But the Eastern Motor Company dealt with Reid & Denight on precisely the same terms as they would have dealt with them had they been incorporated. The cars in suit were sent to them as well as other cars and the dealings continued for a considerable period of time. The bank in dealing with Reid & De-

night had no knowledge whatever that the contract of the Eastern Motor Company ran to a corporation. From the evidence adduced the partnership appeared to be held forth as an authorized dealer in Dodge cars. Further, the act provides that a dealer may issue bills of sale for an automobile for which he is not the authorized dealer but the actual owner. So far as the evidence goes, the cars in question appear to have been sold to Reid & Denight.

A fully executed contract cannot be receded from on the mere ground that one of the parties thereto was not a corporation or exceeded its power. *Camden and Atlantic Railroad* v. *Mays Landing, &c.,* 48 *N. J. L.* 530. "The grantor in a deed to a corporation or one claiming under him is estopped to deny the corporate existence of the grantee for the purpose of defeating the deed." 14 *Corp. Jur.* 233.

The judgment appealed from will be reversed to the end that a *venire de novo* issue.

*For affirmance*—THE CHIEF JUSTICE, LLOYD, CASE, JJ.  3.

*For reversal*—THE CHANCELLOR, TRENCHARD, PARKER, BLACK, CAMPBELL, BODINE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, WELLS, JJ.  12.