ROBERT W. FRASER, complainant,

*v.*

THE GREAT WESTERN SUGAR COMPANY et al., defendants.

[Decided July 31st, 1935.]

*Mr. Louis J. Platt, Mr. Herbert R. Kaus* (of the New York bar), and *Mr. Hamlet J. Barry* (of the Colorado bar), for the complainant.

*Mr. Albert C. Wall, Mr. C. Tracy Vought* (of the New York bar), and *Mr. Caldwell Martin* (of the Colorada bar), for the defendants.

FIELDER, V. C.

This is a suit by the holder of ten shares of preferred stock of the defendant Great Western Sugar Company (hereinafter called the Sugar Company) on behalf of himself and all other stockholders of said defendant who might join herein.

In November, 1933, said defendant had a surplus of $30,000,000 and its officers and directors caused the organization of the Cache La Poudre Company (hereinafter called the New Company) and applied $9,000,000 of the Sugar Companys' surplus to the purchase of the entire authorized capital stock of three hundred and sixty thousand shares of the New Company of the par value of $20 per share and thereupon immediately distributed such shares among the common stockholders of the Sugar Company *pro rata* according to their holdings. At that time the authorized capital of the Sugar Company was $30,000,000, one-half of which

was represented by one hundred and fifty thousand shares of preferred stock of the par value of $100 each and the remaining $15,000,000 was represented by one million eight hundred thousand shares of common stock of no par value.

Complainant's bill alleges that the withdrawal of $9,000,000 from the Sugar Company's surplus seriously impaired the ability of the company to assure future dividends to its preferred stockholders, greatly diminished the assets of the company in which all stockholders, preferred and common, are entitled to share on distribution or liquidation and impaired the company's working capital. The complainant attacks the transaction as *ultra vires* the Sugar Company; as without consideration and as a fraud on that company's stockholders. The defendants are the Sugar Company, the New Company and the directors of the Sugar Company and the bill prays that the New Company be dissolved and ordered to restore the $9,000,000 to the Sugar Company, or that the other defendants be ordered to restore that sum. No other stockholder has joined in complainant's suit.

The Sugar Company's surplus was accumulated prior to 1933 and had been held as protection against uncertain conditions in the sugar market, falling prices and operating deficits. In 1933 it appeared that the company was again operating at a profit and its directors considered what disposition to make of its surplus. Probably, fear of federal legislation taxing corporate surplus had something to do with the directors' decision that part of the surplus should be distributed and it is possible that the method adopted was for the purpose of avoiding taxes which might be imposed under the federal revenue laws had distribution to stockholders been made in cash. The plan adopted was first discussed by the president of the company informally with his directors and meeting with their approval, the New Company was incorporated. A meeting of the Sugar Company directors was held November 15th, 1933, at which formal consideration was given to the plan and it was the unanimous decision of the directors that $9,000,000 of the company's surplus should be distributed among its common stockholders

and that the method of distribution subsequently followed was most favorable for them. On the day of that meeting a notice was mailed to all Sugar Company stockholders, preferred and common, notifying them of the incorporation of the New Company and that the directors of the Sugar Company had authorized a plan of "reorganization" between the Sugar Company and the New Company whereby the New Company would take over $9,000,000 of the Sugar Company's earned surplus as consideration for the entire three hundred and sixty thousand shares of stock of the New Company of the par value of $20 each; that such stock of the New Company would be distributed on or before December 15th, 1933, to the common stockholders of the Sugar Company; that the New Company would have a capital of $7,200,000 and a paid-in surplus of $1,800,000. The notice further stated the purposes for which the New Company was organized. Following the receipt of this notice by complainant, he addressed a letter under date of November 20th, 1933, to the directors of the Sugar Company protesting the proposed action as illegal on the ground that he, as a preferred stockholder, was entitled to share in a distribution of assets of the company and threatening that he might bring legal proceedings to preserve his rights. December 15th, 1933, the Sugar Company notified its common stockholders that the plan of "reorganization" had been consummated and with the notice it enclosed to each common stockholder his *pro rata* share of stock in the New Company. No common stockholder, save one holding twenty-five shares, refused to accept his stock. After complainant had sent his letter of November 20th, 1933, he did nothing further until he filed his bill herein April 10th, 1934.

Complainant charges that the transaction was not put through in good faith; that the directors failed to inform the stockholders of the true reason for the method adopted and characterized the transaction as a "reorganization" when in fact it was not and he insinuates that there was an undisclosed ulterior motive behind the plan. I can find nothing in the evidence to justify the claim that the plan was not

proposed and carried out by the Sugar Company directors in absolute good faith, with an honest desire to further the interests of the company's stockholders. In describing the plan, the word "reorganization" was used within the meaning of the Federal Tax act of 1932, which defines the term to mean (quoting from complainant's brief), "a transfer by a corporation of all or part of its assets to another corporation, if immediately after the transfer, the transferor or its stockholders, or both, are in control of the corporation to which the assets are transferred" and which Tax act seems to provide that in the method here carried out, by the common stockholders of the Sugar Company receiving stock of the New Company no gain to those stockholders would be recognized. As I have said, it is possible that the plan was adopted to come within the provisions of the federal tax laws for the purpose of avoiding the payment of federal taxes and if legal within the provisions of the act, it was certainly for the benefit of the Sugar Company common stockholders. But no stockholder could have been misled by the use of the word "reorganization." They knew that the Sugar Company was absolutely solvent and the plan outlined in the notice of November 15th, 1933, showed them that no reorganization was contemplated within the commonly accepted meaning of the word. The Sugar Company lost nothing by the transaction because it retained none of the stock of the New Company and therefore it can suffer no loss by the operations of that company. It merely took $9,000,000 of its surplus and instead of giving it to its common stockholders in cash, it bought the stock of another corporation and distributed that stock to its common stockholders, which stock at the time of distribution, was worth $9,000,000.

Of the one hundred and fifty thousand shares of preferred stock of the Sugar Company, complainant holding ten shares is the only one objecting to the transaction and of the one million eight hundred thousand shares of common stock only one stockholder, holding twenty-five shares, objected. The annual meeting of stockholders was held May 9th, 1934, notice of which stated that one of the purposes of the meet-

ing was to approve and ratify all acts of the directors since the last stockholders' meeting and fifteen days prior to the meeting the company's annual report referring to the transaction in question, was mailed to all stockholders and it is probable that all stockholders were aware of the fact that complainant had filed his bill of complaint about a month prior to the meeting, yet the only votes cast against such approval and ratification were those of complainant and of the holder of twenty-five shares of common stock.

The articles of incorporation of the Sugar Company provide that the holders of preferred stock shall receive from surplus or net profits, a dividend of seven per cent. annually and no more and that in case of liquidation or distribution of assets, the holders of preferred stock shall be paid the par value thereof before any payment shall be made the holders of common stock and after payment of an equal amount to the holders of common stock the remaining assets shall be distributed, one-half among preferred stockholders and one-half among common stockholders.

The decision of the United States circuit court of appeals for the eighth circuit, on appeal from the United States district court for the district of Colorado, reported in *Fraser* v. *Great Western Sugar Co., 29 Fed. Rep. (2d) 810,* was rendered in a suit brought by the present complainant against the present defendant Sugar Company. That suit arose out of complainant's claim to participation as a preferred stockholder in earned surplus distributed by the Sugar Company as extra dividends to common stockholders. The present complainant there contended that such payment amounted to a distribution of assets in which preferred stockholders were entitled to participate under the provisions of the Sugar Company charter. The decision of the court was that the Sugar Company directors, in their sound discretion, had the right to distribute surplus or net profits to common stockholders; that preferred stockholders of that company were not entitled to receive out of surplus or net profits anything in excess of the regular preferred dividends, so long as the Sugar Company was a going concern; that the charter pro-

vision giving preferred stockholders an interest in the company's assets over the par value of their stock in case of liquidation or distribution of corporate assets, refers to final dissolution and winding up of the corporation and does not apply to distribution of surplus among stockholders, while the company is a going concern.

The decisions of the courts of this state and of other courts settle beyond question that distribution of corporate surplus to stockholders is within the sound discretion of the directors as to time, manner and terms, subject only to such limitations as may be imposed by statutes or corporate charters. It is clear that had the directors of the Sugar Company, exercising sound judgment, decided to distribute $9,000,000 of surplus to the common stockholders in cash, no stockholder, common or preferred, would be heard to object and it is not perceived how the interests of complainant as a preferred stockholder, could be affected by the directors' decision to distribute that amount of surplus by a method other than cash. The company was clearly a "going concern" with ample assets to secure its stockholders both common and preferred. Dividends had been paid on its preferred stock regularly since its incorporation in 1905 and the record shows that the payment of $9,000,000 for the New Company stock did not impair the company's working capital, or its ability to pay future dividends on its preferred stock. The company's financial statement issued in February, 1933, showed that it and its exclusively owned subsidiaries, had gross assets exceeding $76,000,000 and an earned surplus of approximately $30,000,000 as against its capital stock of $30,000,000. The following year, after distributing $9,000,000 surplus to common stockholders, it had a surplus of approximately $24,000,000. I consider that the decision in *Fraser* v. *Great Western Sugar Co., supra,* determines that so long as the Sugar Company continues to carry on business under its charter, it can be no concern of complainant as a preferred stockholder, how its directors in the exercise of sound judgment, determine to dispose of corporate surplus. Here the directors cannot successfully be charged with failure to exer-

cise sound judgment when they decided to make distribution of surplus to common stockholders, and complainant has failed to sustain his claim that the reduction of the surplus by $9,000,000 in December, 1933, worked any injury to his rights as a preferred stockholder.

Complainant seeks to void a transaction which was not against public policy or prohibited by law and which, as I find, was entered into in good faith by the directors of the Sugar Company and wherein that company received full consideration for its part of the transaction and suffered no loss whatever. If it be assumed that the transaction was *ultra vires* the Sugar Company, it would not be set aside at the instance of that company and since this is a derivative action, complainant's right to urge *ultra vires* is no greater than that of the Sugar Company. After the stock of the New Company had been wholly distributed among the common stockholders of the Sugar Company, it was extensively traded in with the result that many of the shares have been sold and transferred to third parties. When complainant filed his bill, six hundred and one of the original recipients of stock had transferred thirty-one thousand seven hundred and twelve of the shares received by them; three hundred and twenty-seven stockholders had transferred eight thousand two hundred and one shares not acquired by distribution, but acquired by transfer from prior holders; one hundred and twenty-nine stockholders had acquired twenty-three thousand five hundred shares in addition to those received by distribution. When this cause came on for hearing, about eight months later, one thousand and fifteen stockholders had transferred fifty-five thousand three hundred and sixty-six shares received as distribution; four hundred and forty-four stockholders held eighteen thousand nine hundred and seventeen shares not received as distribution, but acquired by transfer from prior holders; one hundred and sixty-five stockholders had acquired thirty-six thousand four hundred and forty-nine shares in addition to those received by distribution. It is not now possible to restore the *status quo ante.* It might be possible to direct the New Company to return

$9,000,000 to the Sugar Company but if that be done the stock of the New Company should be ordered returned to it. Perhaps a decree to that effect could operate on those stockholders of the Sugar Company who acquired and still hold the New Company stock distributed to them by the Sugar Company, but such decree to be effective should also require the Sugar Company to buy the New Company stock now in the hands of third parties and the expense thereof undoubtedly would be great to the Sugar Company and its stockholders, including complainant, would suffer by such a decree. *Rural Homestead Co.* v. *Wildes, 54 N. J. Eq. 668; 35 Atl. Rep. 896; Camden Safe Deposit and Trust Co.* v. *Citizens Ice and Cold Storage Co., 69 N. J. Eq. 718; 61 Atl. Rep. 529; Perkins* v. *Trinity Realty Co., 69 N. J. Eq. 723; 61 Atl. Rep. 167; affirmed, 71 N. J. Eq. 304; Whitehead* v. *American Lamp and Brass Co., 70 N. J. Eq. 581; 62 Atl. Rep. 554; Earle* v. *American Sugar Refining Co., 74 N. J. Eq. 751; 71 Atl. Rep. 391; United States Industrial Alcohol Co.* v. *Distilling Company of America, 89 N. J. Eq. 177; Dintenfass* v. *Willat Film Corp., 108 N. J. Eq. 195; 154 Atl. Rep. 546; Downs* v. *Jersey Central Power and Light Co., 115 N. J. Eq. 348; 171 Atl. Rep. 306; affirmed, 117 N. J. Eq. 138; Camden and Atlantic Railroad Co.* v. *May's Landing and Egg Harbor City Railroad Co., 48 N. J. Law 530; Chapman* v. *Iron Clad Rheostat Co., 62 N. J. Law 497; 41 Atl. Rep. 690; First National Bank of Ocean City* v. *Zelley, 106 N. J. Law 510; 150 Atl. Rep. 413; Farmers' and Merchants' National Bank of Bridgeton* v. *Del-Bay Farms, 131 Atl. Rep. 679.*

I think complainant is guilty of laches in bringing his suit. The notice of November 15th, 1933, was duly received by him and it informed him in sufficient detail of what the Sugar Company proposed to do. He then had the same objection to the plan which he sets up in his bill of complaint, as appears by his letter of November 20th, 1933, but he did nothing to prevent the effectiveness of the plan until he filed his bill April 10th, 1934, and in the meantime the rights of many third persons who had acquired stock in the New Com-

pany had vested. His failure to act promptly to oppose an act which he believed the Sugar Company was without authority to perform, also bars his claim to relief. *Rabe* v. *Dunlap, 51 N. J. Eq. 40; 25 Atl. Rep. 959; Beling* v. *American Tobacco Co., 72 N. J. Eq. 32; 65 Atl. Rep. 725; Dana* v. *American Tobacco Co., 72 N. J. Eq. 44; affirmed, 73 N. J. Eq. 736; 69 Atl. Rep. 223; Windhurst* v. *Central Leather Co., 101 N. J. Eq. 543; 149 Atl. Rep. 36; affirmed, 107 N. J. Eq. 528; Breslin* v. *Fries-Breslin Co., 70 N. J. Law 274; 58 Atl. Rep. 313; In re Passaic Consolidated Water Co., 8 N. J. Mis. R. 506; 151 Atl. Rep. 215.*

The bill of complaint will be dismissed, with costs.