**PHARMACEUTICAL SALES AND CONSULTING CORPORATION, Plaintiff,**

v.

**J.W.S. DELAVAU CO., INC., Defendant.**

**Civil Action No. 95–5961(MLC).**

United States District Court, D. New Jersey.

May 13, 1999.

Robert Montecallo, Biagiotti, Marino & Montecallo, Hackensack, NJ, for plaintiff.

Michael Lieberman, Hangley, Aronchick, Segal & Pudlin, Philadelphia, PA, for defendant.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on the motion by defendant J.W.S. Delavau, Co., Inc. ("Delavau") to dismiss plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 17(b) and 12(b)(1). For the reasons expressed herein, defendant's motion is denied.

### BACKGROUND

Plaintiff Pharmaceutical Sales and Consulting Corporation ("PSCC") filed this action in the New Jersey Superior Court on October 16, 1995. Defendant subsequently removed the action to this Court. Plaintiff and defendant entered into a Sales, Consulting and Confidential Disclosure Agreement ("the Agreement") whereby Delavau was to pay PSCC a commission for sales PSCC brought to Delavau from Lederle Laboratories, Inc. The Agreement was executed on July 1, 1992. PSCC alleges that defendant Delavau failed to pay commissions due and owing to PSCC pursuant to the Agreement. The Agreement was signed by John Sadlon, as president and on behalf of PSCC.

The case proceeded through discovery supervised by Freda L. Wolfson, U.S.M.J. Throughout discovery, PSCC represented that it was a corporation organized under the laws of New Jersey. In November 1998, as part of its preparation for trial in this matter, counsel for Delavau contacted the New Jersey Department of Treasury, Commercial Recording Division, to determine whether PSCC remained a corporation in good standing with the state of New Jersey. Defendant's counsel represents that they were informed for the first time that PSCC was not a New Jersey corporation, nor had it ever been registered as a New Jersey corporation.

Counsel for defendant brought the matter to the Court's attention in a telephone

conference on November 16, 1998. Plaintiff's counsel verified at that time that no certificate of incorporation had been filed. This Court raised the issue of whether PSCC had legal capacity to sue under the Agreement. Consequently, we referred this matter to Judge Wolfson so that the parties could conduct limited discovery on the issue of plaintiff's corporate status. Plaintiff provided additional materials on or about December 16, 1998.

Defendant filed the instant motion pursuant to Federal Rule of Civil Procedure 17(b)[1] and 12(b)(1).[2] Delavau argues that plaintiff lacks capacity to sue defendant on the parties' July 1992 contract because PSCC should not be considered a de facto corporation as of that date. Defendant

1. Federal Rule of Civil Procedure 17(b) provides in relevant part: **"Capacity to Sue or Be Sued.** The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." Fed.R.Civ.P. 17(b).

2. Federal Rule of Civil Procedure 12(b)(1) permits a defendant to raise the issue of the Court's subject matter jurisdiction over a particular case by motion prior to filing a responsive pleading. Fed.R.Civ.P. 12(b)(1). The Court may inquire as to its subject matter jurisdiction of the lawsuit at any time. Fed. R.Civ.P. 12(h)(3). Defendant has brought this issue to the Court's attention via a motion to dismiss pursuant to Rule 17(b) and 12(b)(1), arguing that if plaintiff does not have capacity to sue defendant on the contract, this Court lacks subject matter jurisdiction over the lawsuit. (Def.'s Br. in Supp. at 1; Def.'s Reply Br. at 12.) Our research reveals, however, that defendant's position on this point is incorrect. First, defendant's argument regarding plaintiff's lack of corporate status relates to plaintiff's capacity to contract rather than plaintiff's capacity to sue under Rule 17(b). Defendant incorrectly uses these phrases interchangeably. *See* 6A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure,* § 1559 ("Capacity [to sue under Rule 17(b)] has been defined as a party's personal right to come into court, and should not be confused with the question of whether a party has an enforceable right or interest."). Moreover, the Wright and Miller treatise indicates that while *some* early decisions suggested that a defect in capacity to sue deprives the court of subject matter jurisdiction, more recent

further maintains in this connection that plaintiff's lack of corporate status as of the date of the parties' contract renders the Agreement invalid and unenforceable. Defendant relies upon the absence of several documents which, in its view, are essential to any claim that PSCC has attained status as a de facto corporation. Defendant also points out that the only documents produced which tend to support plaintiff's de facto corporate status are the following: (1) plaintiff's handwritten certificate of incorporation which bears the notation "mailed 8–14–92"; (2) plaintiff's federal and state tax returns for years 1993 through 1997; (3) checks for payment of those taxes; and (4) certain correspondence with the Internal Revenue Service

authority has rejected that characterization. *Id.*

We agree with defendant, however, to the extent that it states that the Court must ascertain plaintiff's corporate status at the time of the agreement to determine if plaintiff may maintain a lawsuit against defendant based upon the parties' July 1, 1992 contract. That inquiry, of course, relates to plaintiff's capacity to contract as of that date. We understand defendant's argument in that regard to be that if plaintiff does not qualify as a de facto or de jure corporation as of July 1, 1992, plaintiff's Complaint should be dismissed because the contract is not enforceable. Defendant's argument rests upon the proposition that absent de jure or de facto corporate status, plaintiff was a nonexistent corporation; because the contract was executed by a party that did not exist, there were not two parties to the contract, which in turn renders the contract invalid and unenforceable under those circumstances. (*See, e.g.,* Def.'s Reply Br. at 11–13.) Thus, regardless of defendant's mistaken characterization of the motion, the underlying substantive issue before the Court remains the same. We must determine plaintiff's corporate status at the time of the parties' Agreement in order to evaluate whether plaintiff may sue defendant on the contract. We have determined, however, that evaluating the legal issues pursuant to the Rule 56 framework is appropriate. *See International Sport Divers Assoc., Inc. v. Marine Midland Bank, N.A.,* 25 F.Supp.2d 101, 107 (W.D.N.Y.1998) (issue regarding plaintiff's corporate status and whether it could maintain breach of contract action was raised by defendant through a motion for summary judgment).

(advising of change of corporation's address). Defendant maintains, however, that the notation on the certificate of incorporation is "self-serving," and the documents produced do not demonstrate a bona fide attempt to incorporate. (Def.'s Br. in Supp. at 6–7.) Defendant points out that there are inconsistencies in the information supplied in the documents which in fact support defendant's argument in support of dismissal. (*Id.*)

Plaintiff maintains that this Court should afford PSCC de facto corporate status. John Sadlon, president of PSCC, submitted a certification with exhibits in opposition to defendant's motion to dismiss. Sadlon claims that on or about August 14, 1992, he prepared and mailed to the state of New Jersey a certificate of incorporation for PSCC. (Certif. of John Sadlon in Opp'n to Def.'s Mot. to Dismiss ¶ 1–2.) He claims that he "assumed that the Certificate of Incorporation was filed, as [he] never received notice of the Secretary of State to the contrary." (*Id.* ¶ 3.) Sadlon states further that in light of his belief that his attempts at incorporation were successful, he prepared an application with the Internal Revenue Service ("IRS") for an employer identification number, sent notice to the IRS of a change of corporate address, obtained a corporate book and seal for PSCC (but never filled them out), filed corporate tax returns for tax years 1993 through 1997, and paid taxes with PSCC checks.

Plaintiff argues in the alternative that even if a de facto corporation is not established, defendant should be estopped from relying upon plaintiff's failure to effectuate incorporation prior to the effective date of the parties' contract based upon the doctrine of corporation by estoppel. (Pl.'s Ltr. Br. in Opp'n at 4–5.) Defendant counters that under general principles of estoppel, plaintiff should not have the benefit of the doctrine of corporation by estoppel because John Sadlon actively misled defendant by signing the Agreement on behalf of PSCC on July 1, 1992 when it

was clear that Sadlon had not taken any steps towards incorporating PSCC until August 14, 1992, at the earliest. (Def.'s Reply Br. at 7.) Defendant maintains that throughout the parties' business dealings and this litigation, Delavau was under the mistaken impression that PSCC was a New Jersey corporation. We will address each argument in turn.

## DISCUSSION

A court shall enter summary judgment under Federal Rule of Civil Procedure 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to defeat a motion for summary judgment, the opposing party must establish that a genuine issue of material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Township*, 772 F.2d 1103, 1109 (3d Cir.1985), *cert. denied*, 475 U.S. 1013, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986). A nonmoving party may not rely on mere allegations; it must present actual evidence that creates a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir.1990). Issues of fact are genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505.

### A. De Facto Corporate Status under New Jersey Law

There exists authority for the proposition that a corporation must qualify as "either de jure or de facto or it has no legal capacity to sue or be sued." *St. John the Baptist Greek Catholic Church v. Gengor*, 118 N.J.Eq. 467, 473, 180 A. 379, 383

(N.J.Super.Ct.Chan.Div.1935); *see also* 8 Fletcher, Cyc. Corp. § 3857 (Perm. Ed.1992) (noting that de facto corporations have same capacity to contract as de jure corporations). Plaintiff does not contest this general proposition; nor does it dispute that PSCC does not qualify as a de jure corporation. Rather, the parties' positions diverge on the issue of whether plaintiff qualifies as a de facto corporation.

Our research reveals that prior to the codification of the modern New Jersey Business Corporation Act in 1968, (hereinafter "the Act"), several New Jersey cases recognized the concept of a de facto corporation. Those cases found that a de facto corporation exists if the following three elements are present: (1) there is a law under which a corporation with the power assumed might be incorporated; (2) there has been a bona fide attempt to organize a corporation in the manner prescribed by the statute; and (3) there has been an actual exercise of corporate powers. *Asplund v. Marjohn Corp.*, 66 N.J.Super. 255, 264, 168 A.2d 844, 849 (App.Div.1961); *Culkin v. Hillside Restaurant*, 126 N.J.Eq. 97, 98, 8 A.2d 173, 174 (N.J.Super.Ct. Ch. Div.1939); *Gallant v. Fashion Piece Dye Works*, 116 N.J.Eq. 483, 484, 174 A. 248, 249 (N.J.Super.Ct. Ch. Div.1934). The burden of establishing de facto corporate status is on the party seeking to rely upon it. *See Asplund*, 66 N.J.Super. at 264, 168 A.2d at 849.

While not raised by the parties, we begin our analysis with the preliminary question of whether the codification of the Act in 1968 had any effect upon the continued viability of the doctrine of de facto corporate status. We have found no New Jersey case authority expressly on point.

However, the following provision in the Act raises the issue:

14A:2–7. Certificate of Incorporation

(2) The certificate of incorporation shall be filed in the office of the Secretary of State. The corporate existence shall begin upon the effective date of the certificate, which shall be the date of the filing or such later time, not to exceed 90 days from the date of filing, as may be set forth in the certificate. *Such filing shall be conclusive evidence that all conditions precedent required to be performed by the incorporators have been complied with and, after the corporate existence has begun, that the corporation has been incorporated under this act. . . .*

N.J. Stat. Ann. ("N.J.S.A.") § 14A:2–7(2) (emphasis added). Adopted from the Model Business Corporations Act § 50 (the "Model Act"), the Commissioner's Comments accompanying this subsection provide the following explanation of the highlighted passage:

The last sentence of subsection 14A:2–7(2) has no counterpart in Title 14 [New Jersey's prior Business Corporations Law]. It is adapted from section 50 of the Model Act. Such a provision, which virtually eliminates the distinction between *de jure* and *de facto* corporations, has been enacted in about half the states. . . .

*Id.* Commissioners' Comment—1968 (emphasis in original).

 Several commentators have noted that the drafters of the Model Act intended to eliminate the common law doctrines of de facto corporation and corporation by estoppel by the enactment of § 50.[3]

---

**3.** The rationale for the abolition of the common law de facto doctrine was based in part upon the perception that a bright line rule was necessary to avoid conflicting results and case-by-case analysis. *See* Bradley, *infra* at 535. Moreover, the simplification of incorporation procedures was often cited as a justification for the elimination of the de facto doctrine. *Id.* at n. 78. We note, however, that as to the effect of § 14A:2–7(2) on the continued viability of the corporation by estoppel doctrine, the commentary to § 14A:2–7(2) (New Jersey's version of § 50 of the Model Act) states nothing which evinces an intent to abolish that common law equitable doctrine. In fact, in contrast to the commentary appended to Model Act § 50, the commentary to § 14A:2–7(2) does not mention corporation by

*See* 8 Fletcher, *supra* § 3890; 1 Model Business Corp. Act. Ann. § 2.04 cmt. 2 at 2–50 (3d ed. 1997 Supp.) (providing commentary to §§ 50 and 56 of Model Act); Wayne N. Bradley, Comment, *An Empirical Study of Defective Incorporation*, 29 Emory L.J. 523, 533–34 (1990). While we have found at least one state Supreme Court case which abolished the de facto corporation concept based upon its statute's similar language, *see Timberline Equip. Co. v. Davenport*, 267 Or. 64, 514 P.2d 1109 (1973), we note that at least two New Jersey Appellate Division cases discussed and applied the de facto corporate concept after the enactment of the Act in 1968 without addressing the effect of N.J.S.A. § 14A:2–7(2) or its commentary.[4] *See Cantor v. Sunshine Greenery, Inc.*, 165 N.J.Super. 411, 414, 398 A.2d 571, 573 (App.Div.1979) (citing N.J.S.A. § 14A:2–7(2) for proposition that Sunshine Greenery Inc. was not de jure corporation as of the date the transaction occurred, but then holding that it was a de facto corporation); *Trenton Dressed Poultry, Inc. v. Jamson, Inc.*, 116 N.J.Super. 327, 282 A.2d 405, 406 (App.Div.1971) (noting that no certificate of incorporation was filed until December 1968 and that "authority exists for the proposition that in the absence of the execution of the necessary certificate, there could be no de facto corporation," but deciding case by holding that defendant's failure to exercise corporate powers prior to incorporation precluded the assertion of de facto corporate status in any event). Yet, it appears from the commentary appended to § 14A:2–7(2) that the drafters

sought to eliminate the de facto corporation concept.

While it appears that the effect of similar versions of the Model Act's § 50 has produced divergent views and significant debate among commentators and courts from other jurisdictions, we need not decide whether § 14A:2–7(2) has abolished the de facto corporate concept in New Jersey at this juncture. Assuming *arguendo* that a would-be corporation could in fact prove its corporate existence by demonstrating that it qualifies as a de facto corporation, the facts of this case demonstrate that PSCC cannot qualify as a de facto corporation because it made no "bona fide" attempt to incorporate. Our research has confirmed that there has not been much development in the relevant case law concerning the requirement of a "bona fide" attempt to organize a corporation in the manner prescribed by the statute. However, we have uncovered two New Jersey cases where the courts found de facto corporate status which are instructive. The differences between the facts presented in those cases and this case lead us to conclude that plaintiff has not provided sufficient evidence of a bona fide attempt to organize a corporation in the manner prescribed by the statute.

We begin our analysis with the more recent case, *Cantor v. Sunshine Greenery, Inc.*, 165 N.J.Super. 411, 398 A.2d 571 (App.Div.1979). There the plaintiffs, lessors of property formerly occupied by the corporate defendant, brought suit against Sunshine Greenery, Inc. and its incorpo-

---

estoppel at all. Thus, in our view, the corporation by estoppel doctrine remains valid in New Jersey. We will consider the effect of plaintiff's estoppel argument in Part B, *infra*.

4. In light of the subsequent confusion surrounding the import of the relevant section of the Model Act, we are not surprised that these cases make no mention of the commentary appended to § 14A:2–7(2). Bradley's article offers an explanation of the effect of § 50 on the de facto concept:

The elimination of the de facto doctrine had two very different effects, depending on the

state. In some cases, these provisions were interpreted liberally, and courts found that there could never be limited liability without the issuance of a certificate of incorporation. This interpretation led to arguably inequitable results in some cases. In other states, courts simply ignored these provisions, despite their unequivocal intent, wherever the result would be inequitable.

Bradley, *supra* at 534 (and notes accompanying text).

rator William Brunetti for breach of the parties' lease agreement. It was undisputed that Brunetti intended to act on behalf of the corporation in entering into the lease with plaintiffs. After entering default judgment against the defunct corporation, the Law Division also found Brunetti personally liable on the lease. The primary question on appeal was whether there was a de facto corporation in existence at the time of the execution of the lease. The evidence revealed that on December 3, 1974, prior to entering into the lease agreement, Brunetti signed a certificate of incorporation and forwarded the certificate and check for filing to the Secretary of State. The parties executed the lease on December 16, 1974 with all parties under the impression that Sunshine Greenery was a corporation existing under New Jersey law. However, for some unexplained reason, the certificate was not officially filed until December 18, 1974, two days after the agreement was signed. The trial court held that no de facto corporation existed, and that as a consequence, Brunetti was individually liable for the breach of the lease.

The Appellate Division reversed, holding that there "was ample evidence of the fact that [Sunshine Greenery] was a de facto corporation and that there was a bona fide attempt to incorporate sometime before the consummation of the contract." *Cantor*, 165 N.J.Super. at 415, 398 A.2d at 573. The court explained:

> The act of executing the certificate of incorporation, the bona fide effort to file it and the dealings with plaintiffs [lessors] in the name of that corporation fully satisfy the requisite proof of the existence of a de facto corporation. To deny such existence because of a mere technicality caused by administrative delay in filing runs counter to the purpose of the de facto concept, and would accomplish an unjust and inequitable result in favor of plaintiffs contrary to their own expectations.

*Id.* at 415, 398 A.2d at 573. Thus in *Cantor*, the undisputed evidence demonstrated that Brunetti had taken steps towards incorporation prior to the execution of the lease at issue.

Similarly, in *Paragon Distributing Corp. v. Paragon Laboratories, Inc.*, 99 N.J.Eq. 224, 129 A. 404 (N.J.Super.Ct.Chan.Div.1925), the plaintiff filed an injunctive application against the defendants, arguing that defendants' conduct breached the contract between the parties. Defendants argued, *inter alia*, that the contract lacked mutuality because the plaintiff had not been incorporated at the time the parties executed the agreement. The Chancery Court rejected defendants' argument, explaining that the plaintiff had attempted to file a certificate of incorporation prior to the date the contract was executed. The fact that certain final steps were not taken prior to the parties' contract was deemed immaterial. *Id.* at 225, 129 A. at 405.

The critical difference between the cases cited above and the present case lies in the undisputed fact that prior to the Agreement dated July 1, 1992, plaintiff, through its agent John Sadlon, did not make a bona fide attempt to incorporate PSCC. Sadlon certifies that he prepared and mailed the certificate of incorporation on August 14, 1992. (Sadlon Certif. ¶ 2; *id.*, Ex. A: Certif. of Incorporation dated 8–14–92.) However, the parties' "Sales, Consulting and Confidential Disclosure Agreement" provides the following: "THIS AGREEMENT effective as of July 1, 1992, by and between J.W.S. DELAVAU CO., INC .... and PHARMACEUTICAL SALES AND CONSULTING CORPORATION." (Def.'s Br. in Supp., Ex. A.) Therefore, it is clear that there was no bona fide attempt to incorporate prior to the execution of the contract. Rather, by his own testimony, Sadlon did not attempt to file a certificate of incorporation until 1½ months had elapsed from the date of the contract. Under these circumstances, we need not decide the

more troubling question of whether Sadlon's mailing of a completed certificate, without proof of payment of the filing fee or proof of receipt by the Secretary of State of New Jersey, amounted to a "bona fide" attempt to incorporate. Put simply, assuming that Sadlon did in fact execute and mail the completed certificate on August 14, 1992, any such conduct came too late. *See International Sport Divers Assoc.*, 25 F.Supp.2d at 107–08 (applying Connecticut law and finding that corporation had not made a bona fide attempt to incorporate where corporation's president acting on corporation's behalf made no attempt to incorporate prior to executing contract with defendant; court contrasted cases under Connecticut law where the individual or corporation had made some minimal effort to incorporate prior to contracting). Accordingly, we find that plaintiff may not rely on the doctrine of de facto incorporation to demonstrate that it may sue defendant for breach of the parties' Agreement.

### B. Corporation by Estoppel under New Jersey Law

Plaintiff argues in the alternative that the doctrine of corporation by estoppel saves its claim against defendant. Plaintiff seeks recognition as a corporation by estoppel as a means of validating the contract with Delavau and maintaining this action, contending that Delavau should be estopped from asserting plaintiff's lack of corporate status where Delavau had intended from the outset to deal with plaintiff as a corporate entity. (Pl.'s Ltr. Br. at 4–5.)

Defendant counters that plaintiff should not benefit from the corporation by estoppel concept because John Sadlon entered into the Agreement with the knowledge that PSCC had not yet been incorporated. Defendant maintains that estoppel is premised upon a lack of fraud in the dealings between the parties. Thus, defendant argues that it would be inequitable to apply the doctrine of corporation by estoppel

in this instance because Sadlon knew at the time of the parties' Agreement that PSCC did not yet exist as a corporation. (Def.'s Reply Br. at 9–10.)

The doctrines of de facto incorporation and corporation by estoppel are two related but distinct concepts. 8 Fletcher, *supra* § 3889 ("Apparently, estoppel can arise whether or not a de facto corporation has come into existence, since the doctrine of de facto corporations has nothing to do with the principle of estoppel, the only effect of an estoppel being to prevent the raising of the question of existence of a corporation."); Bradley, *supra* at 529 (noting that if a de facto corporation does not exist, a court can still find a corporation by estoppel); *see also, e.g., Cranson v. International Bus. Machines Corp.*, 234 Md. 477, 200 A.2d 33, 38 (1964). Thus, the fact that § 14A:2–7(2) of the Act could be construed to have abolished the de facto corporation concept has no bearing upon the continued vitality of the corporation by estoppel construct under New Jersey law. *See* note 3, *supra*. Nevertheless, there appears to be a dearth of modern New Jersey case law applying or interpreting the contours of the doctrine of corporation by estoppel.

The doctrine of corporation by estoppel may be summarized in general as follows: one who contracts and deals with an entity as a corporation thereby admits that the entity is a corporation and is estopped to deny its incorporation in an action arising out of the contract or course of dealing. *See* Fletcher, *supra* § 3910; *see generally Stout v. Zulick*, 48 N.J.L. 599, 7 A. 362, 363 (1886) (cited in annotations to Fletcher, *supra* § 3910). However, one of the stated limitations to that general rule is stated succinctly in the Fletcher treatise § 3916:

> Inasmuch as the rule [of corporation by estoppel] originates in equitable principles, it does not apply when it would be inequitable to apply it, or where equitable principles do not require its application, as in case of fraud.

Fletcher, *supra* § 3916; *see also id.* § 3917; *Held v. Crosthwaite,* 260 F. 613, 624 (2d Cir.1919) (Rogers, J., dissenting) (applying New Jersey law) (acknowledging general principle that one who deals with an entity as a corporation is estopped from later denying its existence, but finding nonetheless that "it is another matter when [estoppel] is invoked to relieve from liability persons who have wrongfully held themselves out as the agents of a nonexistent corporation.").

We concur with the Oregon Supreme Court's observation that "courts and writers have 'gone all over the lot' in attempting to define and apply the doctrine [of corporation by estoppel]." *Timberline,* 514 P.2d at 1111–12. We also agree that, in order to apply the doctrine correctly, the cases must be classified according to the nature of the claim at issue and the party being charged with estoppel. *See id.* (citing Ballantine, *Manual of Corporation Law and Practice* § 30 at 91 (1930); 1 Hornstein, *Corporation Law and Practice,* § 30 at 31 n. 6 (1959)). This approach is particularly necessary in light of the various contexts in which the estoppel issue may arise.[5]

Specifically in this case, plaintiff has sued defendant for breach of contract; in defense, Delavau seeks to avoid liability upon the contract by contending that plaintiff was not a lawful corporation at the time of the contract. Delavau concludes from that analysis that the parties' contract is invalid and unenforceable.

The parties have not cited, nor could this Court find, any cases from the New Jersey Supreme Court applying the doctrine of corporation by estoppel in this factual and procedural circumstance. *Cf. Held,* 260 F. at 627 (Rogers, J., dissenting) (recognizing that corporation by estoppel should not be applied so as to limit liability of individuals who have wrongfully held themselves out as agents of a nonexistent corporation); *Federal Advertising Corp. v. Hundertmark,* 109 N.J.L. 12, 160 A. 40 (N.J.1932) (holding that plaintiff was not estopped from asserting claim against individual defendants, each of whom purported to contract with plaintiff on behalf of a nonexistent corporation).

It appears that the weight of authority holds that in this context, where a defendant seeks to avoid potential liability to a would-be corporate plaintiff by contending that the plaintiff was or is not a lawful corporate entity, the doctrine of corporation by estoppel applies such that plaintiff may pursue the contract claim against the defendant despite plaintiff's noncorporate status. *See* Bradley, *supra* at 560 and notes accompanying text; *see, e.g., American Vending Servs. Inc., v. Morse,* 881 P.2d 917, 923–24 (Utah Ct.App. 1994) (Greenwood, J., concurring) ("Usually, courts are willing to apply corporation by estoppel when the case involves a defendant seeking to escape liability to a corporation by complaining that corporate existence is flawed."); *Timberline,* 514 P.2d at 1111–12 (noting that "the fairness of estopping a defendant . . . from denying the corporate existence [of the plaintiff]

5. Courts and commentators have outlined the three most common categories of cases wherein the concept of corporation by estoppel may be implicated. The first is the case in which an association, or its owners, having claimed corporate status in an earlier transaction with a third party, later denies that status in a suit brought by the third party. The third party would seek the benefit of the doctrine of corporation by estoppel, such that the association could not deny its existence in a suit by the third party. The second situation is the case where the question of corporate status is raised by a defendant in a suit brought by the would-be corporation. The defendant in this situation may seek to raise the defense that the plaintiff is not really a corporation, and therefore cannot sue in the corporate name. The final category of cases is where a third party has dealt with a business as a corporation and seeks to impose personal liability on would-be shareholders who in turn raise estoppel as a defense. *See* Carey and Eisenberg, Note on Estoppel, *Cases and Materials on Corporations* at 159 (7th ed.1995). Obviously, the instant case falls in the second category of cases.

... is apparent"); *Childs v. Philpot,* 253 Ark. 589, 487 S.W.2d 637, 641 (1972); *Namerdy v. Generalcar Corp.,* 217 A.2d 109, 112 (D.C.App.1966). The rationale underlying this approach in this factual circumstance is premised upon the courts' desire to effectuate the parties' intent in entering into the contractual arrangement at issue. Bradley, *supra* at 560 (citing cases) ("If the defendant thought it was dealing with a corporation, and later discovered it was in fact dealing with a defective corporation, absent prejudice to the defendant, there is no reason to let the defendant escape liability" based upon a technicality such as defective incorporation). In essence, these cases recognize that permitting the defendant (person or entity) to deny the fact of plaintiff's corporate existence so as to escape potential liability under a contractual arrangement would result in a windfall to defendant beyond that which was expected at the time of the execution of the contract. *Id.*

We find this line of cases persuasive in this instance. We note that the Appellate Division in *Cantor* was persuaded by a similar argument, albeit in a different factual scenario, made by the individual defendant Brunetti. *Cantor,* 165 N.J.Super. at 414, 398 A.2d at 572. Brunetti argued that permitting the plaintiffs to rely on the defendant company's defective incorporation to impose individual liability upon Brunetti was contrary to the parties' intent. The court agreed, noting in this regard that plaintiffs had intended from the outset to contract with the corporation rather than the individual. The court thus held that permitting plaintiffs to rely on defendant's technically defective incorporation "would accomplish an unjust and inequitable result in favor of plaintiffs contrary to their own contractual expectations." *Id.* at 415, 398 A.2d at 573.

We have considered defendant's argument that plaintiff should not be entitled to invoke the doctrine of corporation by estoppel because John Sadlon affirmatively misrepresented the fact of PSCC's corporate existence at the time of the parties' contract by signing the contract as president on behalf of the corporation, and continued to misrepresent that material fact until defendant actually uncovered the plaintiff's true corporate status. While not cited by either party, the Court has found minimal support for defendant's argument in this context, namely, where the defendant is attempting to avoid potential contractual liability by asserting that plaintiff, as other party to the contract, lacked corporate status and thus the capacity to contract. *See International Sport Divers Assoc.,* 25 F.Supp.2d at 111.

■ At first blush, defendant's argument has some appeal. However, we find it ultimately unpersuasive when considered in light of three important countervailing considerations which exist in this case. First, permitting defendant to avoid liability under the contract based upon a technicality such as plaintiff's defective incorporation appears contrary to general principles of New Jersey law. While not directly on point, we have uncovered cases which indicate in general a reluctance to permit avoidance of potential contractual liability based upon a technical defense such as lack of corporate status of the other party at the time of contracting. *See First National Bank of Ocean City v. Zelley,* 106 N.J.L. 510, 150 A. 413 (1930) ("A fully executed contract cannot be receded from on the mere ground that one of the parties thereto was not a corporation."); *see also Hudson Cooperative Loan Ass'n, Inc. v. Horowytz,* 116 N.J.L. 605, 186 A. 437 (1936) (where plaintiff corporation made a loan to defendant and defendant allegedly defaulted, plaintiff sued for remainder owed; New Jersey Supreme Court rejected defendant's argument that trial court should have granted his motion for nonsuit because plaintiff was a corporation doing banking business in violation of the General Corporation Act) (citing *Zelley* and proposition quoted above); *Cantor,* 165 N.J.Super. at 415, 398 A.2d at 573. Second, accepting defendant's argu-

ment would be contrary to the parties' intent at the time of the Agreement and would thus present a windfall to defendant. Finally, permitting defendant to escape liability would be particularly inequitable in this instance in light of the fact that defendant has provided no evidence that it has relied on plaintiff's misrepresentations regarding its alleged corporate status to its detriment. *Cf. International Sport Divers Assoc.*, 25 F.Supp.2d at 110 (finding that defendant provided evidence showing that it required plaintiff to incorporate specifically as part of the contractual arrangement, and that plaintiff failed to provide contrary evidence which demonstrated that plaintiff's corporate status was immaterial to defendant's decision to contract with plaintiff). In balance, these three countervailing considerations must prevail in the particular posture of this case. Accordingly, we find that defendant is estopped from relying upon plaintiff's lack of corporate status at the time of the parties' contract in order to avoid suit on the July 1992 Agreement.

The Court will deny defendant's motion to dismiss. An appropriate Order accompanies this Memorandum Opinion.

### ORDER

For the reasons expressed in the accompanying Memorandum Opinion,

**IT IS THEREFORE** on this day of May, 1999 **ORDERED** that defendant's motion to dismiss (no. 57–1 on the docket) be and hereby is **DENIED.**